In re SERVICE CORPORATION IN-TERNATIONAL, Robert L. Waltrip, L. William Heiligbrodt, and George R. Champagne, Relators.

No. 01–0650.

Supreme Court of Texas.

Aug. 29, 2002.

Michael D. Hopkins, Bracewell & Patterson, Houston, Herman E. Bate, Fenley & Bate, Lufkin, Michael J. Truncale, Orgain Bell & Tucker, Beaumont, C. Thomas Kruse, J. Clifford Gunter, III, Bracewell & Patterson, Houston, Martha R. Campbell, Orgain Bell & Tucker, Beaumont, Tracy C. Temple, Bracewell & Patterson, Houston, Justice Greg Abbott, Bracewell & Patterson, Austin, Warren W. Harris, Bracewell & Patterson, Houston, for Relators.

Mark L.D. Wawro, Susman Godfrey, Houston, Gregory S. Coleman, Weil, Gotshal & Manges, Austin, Harry Paul Susman, Susman Godfrey, Houston, George Chandler, Chandler Law Offices, Lufkin, for Respondent.

PER CURIAM.

Relators in this original mandamus proceeding are the four defendants in both a federal court class action involving only federal law claims and a state court action involving only state law claims. Both actions raise similar but not identical factual allegations of securities fraud in a merger transaction. The two plaintiffs in the state court action are members of the class in federal court. At least one of the plaintiffs in state court is bound by an arbitration agreement covering all his claims, state and federal, but almost all of the other members of the class in federal court are not. Relators moved the state to compel arbitration of the state law claims, and the plaintiffs responded that relators had waived any right to arbitration by delay and because of their willingness to litigate the federal law claims in federal court. The trial court denied relators' motion. We conclude that this was an abuse of discretion remediable by mandamus.

Service Corporation International and Equity Corporation International, two large, publicly traded corporations engaged in the death care business, merged in a stock-for-stock transaction in January 1999. One week later, SCI announced that its earnings for the prior quarter were lower than expected, and its stock fell. Within days, more than twenty identical class actions were filed in federal courts against SCI and three of its officers at the time of the merger[1] alleging securities fraud. The actions were consolidated,[2] and in August 1999 a class was certified that included all SCI shareholders other than its officers at the time of the merger. The four defendants, relators in the proceeding now before us, moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995.[3] The parties here tell us that this

1. They are Robert L. Waltrip, L. William Heiligbrodt, and George R. Champagne.

2. *In re Service Corp. Int'l*, Civil No. H–99–280 (S.D.Tex.).

3. Pub.L. No. 104–67, 109 Stat. 737 (1995).

motion remains pending and has the effect of staying proceedings in federal court.

James P. Hunter, III, ECI's chairman and chief executive officer, and the James P. Hunter, III Family Trust (collectively, "the Hunters") were major shareholders in ECI and received SCI stock in the merger. The Hunter Family Trust was thus a member of the class in federal court, but Hunter himself was excluded because he had become an officer of SCI as part of the merger. In November 1999, a little over two months after the class was certified, the Hunters filed suit in state court against SCI and the three individual defendants in the federal action, along with three other SCI officers and its accountant, PricewaterhouseCoopers. The Hunters' factual allegations are much like those made in federal court, but there are differences. For example, an allegation made only in federal court is that SCI failed to disclose that its pre-need funeral business was a drain on profits. Also, the Hunters argue that they complain only of misrepresentations made near the time of the merger while class members who obtained SCI stock independent of the merger may not be able to recover absent proof of misrepresentations made long before the merger closed. And just as the federal action does not involve any state law claims, the state action does not involve any federal law claims.

Relators moved the federal court in December 1999 to stay all discovery in the state action under the Securities Litigation Uniform Standards Act of 1998,[4] and the court heard the motion in May 2000. At that hearing, in response to questions from the court, SCI suggested that Hunter be made a member of the class. The court issued two orders, one amending the class definition to include Hunter, and the other staying discovery in the state action as relators had requested and also ordering on its own initiative that the Hunters litigate all of their claims in the federal action. The Fifth Circuit vacated the second order in September 2000, holding that the district court was not authorized to prohibit the Hunters from opting out of the class and pursuing their claims elsewhere.[5] Relators immediately renewed their motion to stay discovery in state court, and the federal court granted the motion a few days later.

Since the federal court had not stayed all proceedings in state court, the Hunters moved the state court for a preferential trial setting. In February 2001, the same day that motion was heard, relators and the other defendants in state court filed a motion to compel arbitration of the Hunters' state law claims, based on the following provision in the merger agreement between SCI and ECI:

> upon the request of any party (defined for the purpose of this provision to include affiliates, principles [sic] and agents of any such party), any dispute, controversy or claim arising out of, relating to, or in connection with this Agreement or any agreement executed in connection herewith or contemplated hereby, . . . shall be finally resolved by mandatory and binding arbitration in accordance with the terms hereof.

In a written response, the Hunters urged that relators had waived any right to arbitrate by delaying their request for arbitration, opposing a trial setting, and proceeding in federal court. The Hunters agreed to nonsuit the four defendants other than relators. At the hearing on relators' mo-

---

4. Pub.L. No. 105–353, 112 Stat. 3227 (1998).

5. *In re Service Corp. Int'l,* No. 00–20451 (5th Cir., Sept.13, 2000) (per curiam) (unpublished).

tion, the Hunter Family Trust also argued that it was not covered by the arbitration agreement, an argument it had not made in the written response to relators' motion. The trial court denied the motion, and the court of appeals denied mandamus relief.[6]

The parties agree that the arbitration provision is governed by the Federal Arbitration Act.[7] In the words of the United States Supreme Court, "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."[8] We have held that under the federal statute, "Courts will not find that a party has waived its right to enforce an arbitration clause by merely taking part in litigation unless it has substantially invoked the judicial process to its opponent's detriment."[9] There is a strong presumption against waiver.[10] We have also held that "[w]hether a party's conduct waives its arbitration rights under the Federal Arbitration Act is a question of law."[11]

Relators' delay in moving to compel arbitration and their opposition to the Hunters' request for a trial setting do not amount to a waiver of arbitration. Neither involved a substantial invocation of the state judicial process. During the delay relators sought no relief from the state court, and their objection to a trial setting reflects an intent to avoid the state judicial process, not invoke it. Moreover, we have held that "[a] party does not waive a right to arbitration merely by delay; instead, the party urging waiver must establish that any delay resulted in prejudice."[12] To show prejudice from delay, the Hunters argue only that they would not have had to appeal the federal court order requiring them to try all their claims in federal court had relators earlier asked for arbitration of the state law claims. But relators did not invoke the federal court issuance of that portion of its order; the federal court issued that part of the order on its own initiative, and it is far from clear that the court would have ruled differently had arbitration already been requested. The Hunters complain that relators defended the federal court's order on appeal, and to some extent they did, although the Fifth Circuit noted that relators argued that the federal district court "did not intend [the] effect" its language had. In any event, the detriment to the Hunters was caused by the federal court's ruling, not by relators' defense of it.

**6.** *In re Service Corp. Int'l*, No. 09–01–252–CV (Tex.App.-Beaumont, order issued June 29, 2001) (per curiam) (unpublished).

**7.** 9 U.S.C. §§ 1–307.

**8.** *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

**9.** *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex.1998) (per curiam) (citing *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir.1991)); *accord, EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex.1996) (per curiam) (citing *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir.1986)).

**10.** *Bruce Terminix*, 988 S.W.2d at 704 (citing *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. 927); *EZ Pawn*, 934 S.W.2d at 89 (same); *Prudential Securities, Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex.1995) (per curiam) (same).

**11.** *Bruce Terminix*, 988 S.W.2d at 703–704 (citing *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159 (5th Cir.1986)).

**12.** *Prudential Securities*, 909 S.W.2d at 898–899 (citing *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir.1985)).

The Hunters' principal argument is that relators have waived arbitration of the state law claims by invoking the federal judicial process—specifically, by moving to dismiss the complaint, moving for a stay of state court discovery, supporting Hunter's inclusion in the class, and otherwise indicating a willingness to litigate in federal court. We do not agree. The filing of a motion to dismiss the claims of class members, almost all of whom are not subject to arbitration, did not waive arbitration.[13] The effect of that motion was to stay discovery in federal court, and federal law authorized a stay of discovery in state court. Relators' efforts in moving to dismiss and staying discovery were to avoid litigation, not participate in it. Including Hunter in the class was the federal court's suggestion in which relators at most acquiesced.

The Hunters would have a stronger position if the federal and state claims were more alike. Regarding the similarity of the state and federal claims, the parties have maintained flexibility. In opposing a trial setting, relators told the state court that the claims are "virtually identical" while the Hunters characterized them as "quite different"; now relators tell us that the claims are "different" while the Hunters embrace relators' earlier view that they are "virtually identical". The truth, as we have noted, is that the federal and state actions are quite similar, arising as they do out of the same merger transaction, yet different in several particular respects. The important thing, however, is that almost all of the class members' claims cannot be arbitrated. Relators should not be forced to arbitrate the Hunt-

ers' federal claims alone of all the other class members in order to preserve their right to arbitrate state claims that only the Hunters have asserted.

The Fifth Circuit has held that "a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate."[14] We do not read this to suggest that a party has unlimited freedom to decide to arbitrate some interrelated claims and litigate others. On the other hand, the arbitration provision involved here gave parties the right to arbitrate "*any* dispute, controversy or claim" related to the merger agreement. This provision is broad enough to permit relators to litigate the Hunters' federal claims with those other class members while insisting on arbitration of the Hunters' state claims.

The Hunter Family Trust argues that it is not subject to the arbitration provision. It did not raise this argument in its written response to relators' motion to compel but mentioned it at the hearing on the motion. Although relators asserted in their motion to compel arbitration that the provision extended to the Hunter Family Trust, they now contend that the issue is not before us because it is not clear that the trial court ruled on it. The issue involves arguments that we think should be addressed by the trial court in the first instance, and therefore we express no opinion on the subject. We leave the matter for further consideration by the trial court.

We conclude that as a matter of law relators did not waive their right to arbitrate the Hunters' state law claims, and

**13.** *See Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.,* 754 F.2d 457 (2d Cir.1985).

**14.** *Subway Equip. Leasing Corp. v. Forte,* 169 F.3d 324, 328 (5th Cir.1999) (citing *Doctor's Assocs. v. Distajo,* 107 F.3d 126, 132–33 (2d Cir.), *cert. denied,* 522 U.S. 948, 118 S.Ct. 365, 139 L.Ed.2d 284 (1997) ("only prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate")).

that the trial court therefore abused its discretion in denying the relators' motion on this basis. For reasons we have explained in similar contexts, relators have no adequate legal remedy.[15] Accordingly, we grant relators' petition for mandamus and without hearing oral argument[16] direct the trial court promptly to vacate its order of May 7, 2001, denying relators' motion to compel arbitration, and to grant the motion as to James P. Hunter, III. We are confident the trial court will comply, and our writ will issue only if it does not.

---

15. *E.g., EZ Pawn,* 934 S.W.2d at 90; *Prudential,* 909 S.W.2d at 900.

