Petition for Mandamus Conditionally Granted and Opinion filed January
31, 2003













Petition for
Mandamus Conditionally Granted and Opinion filed January 31, 2003.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-02-00871-CV

_______________

 

In re BP AMERICA PRODUCTION COMPANY,

f/k/a AMOCO PRODUCTION COMPANY and

TOC-ROCKY MOUNTAINS, INC., Relators

___________________________________________________________

 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

___________________________________________________________

 

O P I N I O N

 

            BP America Production Company, f/k/a
Amoco Production Company, and TOC-Rocky Mountains, Inc. (collectively, “BP”)[1] seek
a mandamus directing the trial court to vacate its order denying BP’s motion to
compel arbitration and to enter an order compelling arbitration of all issues
in the underlying lawsuit (the “lawsuit”). 
We conditionally grant the petition for mandamus.




Background

            The lawsuit was filed against BP by
real-parties-in-interest Occidental Permian Ltd. (“LP”), a limited partnership,
and Occidental Permian Manager, L.L.C. (“LLC”), its general partner.  LLC and LP seek a declaration that they own
and are entitled to exercise certain contractual “call” rights (the “calls”),
which are rights of first refusal to purchase crude oil from certain
third-party producers at predetermined prices. 
LLC and LP also seek damages from BP for continuing to exercise the calls
in denial of LLC and LP’s alleged rights to do so.  BP filed a motion to compel arbitration of
the dispute, which was denied by the trial court.  The parties do not contest that the
arbitration issue in this case arises under the Federal Arbitration Act[2] (the
“FAA”) rather than the Texas Arbitration Act[3] and, thus,
that the trial court’s ruling is reviewable by
mandamus[4]
rather than interlocutory appeal.[5]

                                                            Standard of Review

            A party seeking to compel
arbitration by mandamus must establish both the existence of an arbitration
agreement subject to the FAA and that the claims at issue fall within the scope
of the arbitration agreement. In re J.D.
Edwards World Solutions Co., 87 S.W.3d 546, 549 (Tex. 2002)
(orig. proceeding).  If the arbitration
agreement encompasses those claims and there are no defenses to enforcement of
the arbitration obligation, the court has no discretion but to compel
arbitration and stay its own proceedings. 
Id.  Where a trial court erroneously denies a
motion to compel arbitration under the FAA, the movant
has no adequate remedy at law and is entitled to mandamus relief.  In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001)
(orig. proceeding).

            When a party asserts a right to
arbitrate under the FAA, the question whether the dispute is subject to
arbitration is determined under federal law. 
Prudential Secs.
Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995)
(orig. proceeding).  As a matter of
federal law, any doubts concerning the scope of arbitrable
issues are resolved in favor of arbitration, whether pertaining to the
construction of the contract or a defense to arbitration, such as waiver.  In re Serv. Corp. Int’l, 85 S.W.3d 171, 174 (Tex. 2002)
(orig. proceeding).

                                           Existence of an Arbitration Agreement

            In 1997, LLC and LP[6] were
created by BP and Shell Oil Company and its affiliates (collectively, “Shell”)
pursuant to a master agreement.  An
assignment agreement (the “assignment”) was also entered into whereby BP
conveyed various oil and gas related assets to LP, allegedly including the
calls.  BP and Shell thereafter sold a
controlling interest in LLC and LP to Occidental Petroleum Corporation
(“OPC”).  The agreements evidencing this
sale included a purchase and sale agreement (the “PSA”) and a closing
agreement.  Article 16.1 of the PSA
contains the arbitration provision (the “arbitration provision”) upon which BP
relies in this proceeding.  However,
because LLC and LP were not parties to the PSA, our first issue is whether LLC
and LP are nevertheless bound by the arbitration provision, i.e., whether an arbitration agreement
exists between these parties.

            Although LLC and LP were not parties
to the PSA, they were parties to the closing agreement (as was BP).  The closing agreement: (1) recites that it is
“expressly contemplated by” the PSA; (2) refers to various provisions of the
PSA, which contemplate certain releases, amendments and terminations of various
existing agreements, and assumption of certain liabilities; (3) sets forth the
terms necessary to effect those changes; and (4) contains the following merger
provision (the “merger provision”): “This Agreement, together with the [PSA]
and the other Operative Documents [defined in the PSA] supersede all prior . .
. agreements . . . between the Parties with respect to the subject matter
hereof and constitute the entire understanding and agreement between the
Parties with respect thereto.”

            Instruments pertaining to the same
transaction may be read together to ascertain the parties’ intent, even if the
instruments were executed at different times and do not expressly refer to each
other, and a court may determine as a matter of law that multiple documents
comprise a single written contract and construe them accordingly.  Fort
Worth Indep. Sch. Dist. v.
City of Fort
 Worth, 22 S.W.3d 831, 840 (Tex.
2000).  In this case, the closing
agreement was necessary to the PSA and has no apparent purpose other than to
facilitate the transaction set forth in the PSA.  Therefore, the closing agreement and PSA can
hardly be treated other than as two parts of a single agreement.  In addition, in the merger provision, LLC and
LP expressly agreed that the closing agreement, PSA, and Operative Documents
are the agreement of the parties with respect to the relevant subject matter
and thus that LLC and LP are thereby bound by the terms of those
agreements.  Because the arbitration
provision in the PSA is one of those terms, we conclude that LLC and LP are
bound by it.

                                             Scope of the Arbitration Agreement

            The policy favoring enforcement of
arbitration agreements is so compelling that a court should not deny
arbitration unless it can be said with positive assurance that the arbitration
clause is not susceptible to an interpretation that would cover the dispute at
issue.  Prudential, 909 S.W.2d at 899. 
To determine whether a party’s claims fall within the scope of an
arbitration agreement, we focus on the complaint’s factual allegations rather
than the legal causes of action asserted. 
FirstMerit,
52 S.W.3d at 754.  To be within the scope
of an arbitration provision, the allegations need only be factually intertwined
with arbitrable claims or otherwise touch upon the
subject matter of the agreement containing the arbitration provision.  See
Prudential, 909 S.W.2d at 900.  The
burden of establishing that a claim falls outside the scope of an arbitration
agreement is on the party opposing arbitration. 
Prudential, 909 S.W.2d at 900.[7]

            In this case, the PSA requires
arbitration of “any and all disputes arising under, related to, or in
connection with this Agreement . . . .” 
In that the closing agreement is part of the same overall agreement as
the PSA, it logically follows that a dispute concerning the closing agreement
would also be related to the PSA for purposes of the arbitration provision.

            The parties mainly dispute: (1)
whether the calls were among the assets conveyed by BP to LLC and LP in the
assignment; (2) whether the calls were among the assets included in LLC and LP
when BP and Shell sold their interests in them to OPC; (3) whether OPC
possessed and exercised an option to cancel the agreement that had, until then,
given BP the right to exercise the calls; and (4) whether LLC and LP have
recourse against BP under the applicable agreements to assert a claim to the
calls.  LLC and LP contend that the dispute
is not within the scope of the arbitration provision because their right to the
calls will be determined under the assignment, not under the PSA.  BP asserts that the PSA and closing agreement
specify what assets were held by LLC and LP at the time of their sale to OPC
and release BP from any liability related to the assignment.  Therefore, according to BP, the lawsuit will
principally involve a dispute regarding the PSA, which is subject to
arbitration.

            Without intruding on the merits of
this case, we cannot determine whether its resolution will ultimately turn on
the assignment, the PSA and closing agreement, or some combination
thereof.  However, the relief sought by
LLC and LP’s petition is not necessarily limited to a declaration of what they
received in the assignment, but extends to whether they currently own and are
entitled to exercise the calls and whether BP is liable to them for continuing
to exercise the calls after its rights to do so were allegedly cancelled.  In that regard: (1) articles 1.36 and 1.136
of the PSA define the assets and properties held by LP and LLC at the time of
their sale to OPC to include those listed on Exhibit A of the PSA; (2) the
merger provision (discussed in the preceding section) purports to delimit the
agreements remaining in effect between the parties (among which the assignment
is not listed); (3) LLC and LP rely upon an exhibit to the closing agreement to
establish that the assignment remains in effect; and (4) section 4.1 of the
closing agreement provides that “[e]ffective as of
Closing, except for the . . . obligations . . . in the [PSA] and in this
Agreement, [OPC on behalf of itself, LLC, and LP] . . . releases . . . [BP]
from any and all Claims . . . with respect to Contracts or arrangements between
[LP or LLC] . . . and [BP] . . . attributable to pre-Closing periods . . .
.”  Although it is again beyond the scope
of this proceeding to determine whether or how any of these provisions might
ultimately bear on the dispute, their meaning and effect will likely have a
central role among the matters contested by the parties.  Under these circumstances, resolving any
doubt in favor of arbitration, as we must, we cannot say with positive
assurance that the arbitration provision is not susceptible of an interpretation
that would cover the dispute at issue,[8] or that
LLC and LP’s allegations are not at least factually intertwined with arbitrable claims or do not otherwise touch upon the
subject matter of the PSA.[9]  Therefore, the record does not demonstrate
that LLC and LP’s claims are unrelated to the PSA so as to be outside the scope
of its arbitration provision.

                                                                       Waiver

            Whether a party has waived its
arbitration rights under the FAA is a question of law.  In re Serv. Corp., 85 S.W.3d at 174.[10]  There is a strong presumption against such
waiver.  Id.  Accordingly, under the FAA, a party does not
waive a right to arbitration merely by delay or even by substantially invoking
the judicial process[11]
unless either causes prejudice to the opponent. 
Prudential, 909 S.W.2d at 898-99.  The burden of establishing a defense to
arbitration is on the party opposing it. 
FirstMerit,
52 S.W.3d at 756.

            LLC and LP contend that BP: (1)
waived its right to arbitrate by refusing LLC’s
pre-lawsuit demand to arbitrate (pursuant to an arbitration clause in the
master agreement) and asserting then that it had no agreement with them “to
arbitrate this or any other dispute”; and (2) waived its right to seek mandamus
by waiting two months after the trial court’s order denying arbitration to do so.[12]  Under the foregoing authorities, and the
strong presumption in favor of arbitration and against its waiver, it appears
that such actions can result in waiver only if LLC and LP have demonstrated
that it caused them prejudice.[13]

            Apart from the loss of time, which
is not alone sufficient prejudice to produce waiver, LLC and LP claim that they
have been harmed by BP’s actions in that: (1) they have incurred additional
expense from BP’s reversal of its position on arbitration; (2) they have been
substantially prejudiced in their ability to deal with the third parties who
granted the call rights; and (3) they have lost the benefit of the calls as to
the estimated four million barrels of oil produced that would have been subject
to them.

            As to the first item, LLC and LP do
not specify the type or amount of expense they claim to have incurred or cite
any evidence which substantiates it.  To
the extent LLC and LP had a valid right to arbitration under the master
agreement (which is not before us in this proceeding), recourse to the courts
to enforce that right was available to them,[14] and
article 17.12 of the master agreement states that the party who unsuccessfully
opposed arbitration thereunder would pay all costs
incurred in connection with a court proceeding necessary to compel it.  If LLC and LP chose not to avail themselves
of that recourse or had no such valid right, they cannot blame BP for their
expense in seeking, but then abandoning their claim for, arbitration under the
master agreement in favor of a court action. 
Nor can they hold BP responsible for their subsequent expense to
unsuccessfully oppose arbitration under the PSA.

            Similarly, LLC and LP have not
particularized, or cited evidence to support, their claim of impaired dealings
with the third party producers.  As with
their alleged, but also unsubstantiated, claim of loss on calls attributable to
oil produced in the interim, this ground of prejudice assumes that LLC and LP
have a valid right to the calls in the first place, which remains to be determined.  Moreover, to the extent they succeed in
establishing that right, any damages they have suffered from being denied it
would seemingly be recoverable in the arbitration and not lost as a result of
any actions by BP that were inconsistent with its right to arbitration.[15]

            Under these circumstances, LLC and
LP have not demonstrated prejudice that would result in BP waiving its right to
arbitration or a mandamus remedy to enforce it. 
Accordingly, we: (1) conclude that the trial court abused its discretion
in denying BP’s motion to compel arbitration and that BP has no adequate remedy
by appeal; (2) grant BP’s petition for mandamus; and (3) direct the trial court
to vacate its June 24,
 2002, order denying BP’s motion to compel arbitration and to
enter an order granting that motion.[16]

                                                                                    

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment
rendered and Opinion filed January
 31, 2003.

Panel
consists of Justices Edelman, Seymore, and Guzman.

 

 











[1]           Throughout the opinion, unless
otherwise indicated, references to a company will also refer to its predecessor
companies, if any.





[2]           See Federal
Arbitration Act, 9 U.S.C.A. §§ 1-16 (West 1999).





[3]           See Tex. Civ. Prac. & Rem. Code Ann.
§§ 171.001-.098 (Vernon 1997 & Supp. 2003).





[4]           See In re
J.D. Edwards World Solutions Co., 87 S.W.3d 546, 549 (Tex. 2002)
(orig. proceeding).





[5]           See Tex. Civ. Prac. & Rem. Code Ann.
§ 171.098(a) (Vernon Supp.
2003).





[6]           See supra note 1.





[7]           We acknowledge the apparent
inconsistency among Texas Supreme Court opinions regarding which party has the
burden to establish whether the underlying claims are within the scope of the
arbitration agreement.  Compare J.D. Edwards, 87 S.W.3d at 549
(“a party seeking to compel arbitration by mandamus must establish . . . that
the claim at issue falls within the scope of the arbitration agreement”) with Prudential, 909 S.W.2d at 900 (“The
burden was on [the parties opposing arbitration] to show that their claims fell
outside the scope of the arbitration agreement.”).





[8]           See
Prudential, 909 S.W.2d at 899.





[9]           See id. at 900.





[10]          Whereas the Texas Supreme Court has
thus indicated that defenses to arbitration under the FAA, such as waiver, are
to be decided by the courts, the United States Supreme Court has held that
allegations of waiver, delay, or like defenses to arbitrability
should instead be decided by the arbitrator. 
See Howsam
v. Dean Witter Reynolds, Inc., 123 S.Ct. 588, 592
(2002).





[11]          A party invokes the judicial
process only to the extent it litigates a specific claim that it subsequently
seeks to arbitrate.  In re Serv. Corp., 85 S.W.3d at 175.  LLC and LP do not assert that BP has
substantially invoked the judicial process in this case.





[12]          LLC and LP do not cite a case in
which the Texas Supreme Court has: (1) found that a right to arbitration or a
mandamus remedy to enforce it has been waived; or (2) even denied review of a
court of appeals decision so holding. 
The only cases they cite in which an arbitration right was waived
involved a substantial invoking of the judicial process, and the only case they
cite in which a mandamus remedy was waived regarding arbitration involved a ten
month delay in challenging an order compelling
arbitration, none of which is involved in this case.  See Sedillo v. Campbell, 5 S.W.3d
824, 826-29 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding that Sedillo waived right to arbitration by filing bankruptcy
proceeding in bad faith to avoid same claim, then filing amended answer with
counterclaim, request for jury trial, summary judgment response, and motion to
set aside deemed admissions, all before filing motion for arbitration); Quanto Int’l Co. v. Lloyd, 897 S.W.2d 482, 488
(Tex. App.—Houston [1st Dist.] 1995, orig. proceeding) (denying mandamus relief
from order compelling arbitration because Quanto had
designated an arbitrator and waited 10 months without justification to seek
mandamus to oppose arbitration); Cent.
Nat’l Ins. Co. v. Lerner, 856 S.W.2d 492, 494-95 (Tex. App.—Houston [1st
Dist.] 1993, orig. proceeding) (holding that CNIC waived arbitration right
where its motion to compel was filed more than 17 months after it was sued, and
after CNIC had filed an answer and counterclaim, propounded and received
responses to discovery requests, and joined in a request for a preferential
trial setting).





[13]          See In re Serv. Corp., 85 S.W.3d at 173-74 (holding
that two year delay in moving to compel arbitration did not amount to waiver
absent prejudice to opponent caused by the delay).





[14]          See Tex. Civ. Prac. & Rem. Code Ann.
§ 171.021(a) (Vernon Supp.
2003).





[15]          Moreover, in this mandamus
proceeding, besides opposing arbitration, LLC and LP have also opposed a stay
of the lawsuit, so that their discovery can proceed now and under the rules of
trial procedure, rather than being delayed and possibly being limited by the
applicable rules of arbitration procedure. 
In that regard, rather than being prejudiced by any lapse of time since
the lawsuit was filed, LLC and LP have benefitted
from it.





[16]          A formal writ of mandamus will not
issue unless the trial court fails to comply with this conditional order.