Opinion issued April 30, 2026



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-25-00109-CV

———————————

**FOLEY & LARDNER LLP, SUCCESSOR-IN-INTEREST TO GARDERE WYNNE SEWELL, LLP, TIMOTHY SPEAR, JAMES G. MUNISTERI, AND SHARON M. BEAUSOLEIL, Appellants**

**V.**

**STEPHEN H. DERNICK AND DAVID D. DERNICK, Appellees**

———————————

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-77937**

———————————

**O P I N I O N**

This lawyer-client case presents an issue about waiver of the right to arbitrate.

The engagement letter has an arbitration clause, but the clients broke that promise

and went directly to court.

The lawyers then did the following:

- They demanded arbitration even before filing an answer, but to no avail (December 2021).

- They followed up on the arbitration demand with a combined answer and motion to compel arbitration and for stay (December 2021).

- A month later—under the strict timeline prescribed by the legislature—they moved to dismiss under the TCPA, subject to the motion to compel arbitration (January 2022).

- A few weeks after that, they persuaded the judge to grant the TCPA motion and dismiss the clients' claims (March 2022).

When the clients appealed, this Court reversed the TCPA ruling and remanded for further proceedings in August 2024. On remand, the lawyers supplemented the motion to compel arbitration and set it for a hearing. But the clients argued that the lawyers had now missed the train to arbitration.

Neither side has identified a case quite like this one. But the party asserting waiver "bears a heavy burden of proof to show the party seeking arbitration has waived its arbitration right," and the presumption against waiver "governs in close cases." *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016) (per curiam). The burden has been said to be even heavier where the party seeking arbitration demands arbitration at or prior to the suit commencing. *See Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 307 (5th Cir. 2021). That heavy burden has not been met. In our view, the arbitration train was delayed but not missed. In this case, the lawyers had two tools at their disposal: their contractual

2

right to arbitrate, and their statutory right to seek dismissal (on a short timeline) under the TCPA. They pursued both—and on this record, they did not waive their right to arbitrate.

We reverse the trial court's order denying the lawyers' motion to compel arbitration.

## Background

In 2013, four minority shareholders in a corporation hired Gardere Wynne Sewell LLP to help with certain legal matters. The engagement letter devotes an entire section to arbitration. That section begins:

<u>Mediation/Arbitration</u>

> In the event of any dispute or controversy regarding or arising out of our representation of you, it is agreed that the same shall be subject to mediation before a mutually-agreeable mediator. If the mediation is unsuccessful, or if we are unable to agree upon a mediator within thirty days after the dispute arises, then the dispute shall be subject to binding arbitration at Houston, Texas. The arbitration shall be administered by the American Arbitration Association in accordance with its then current rules and procedures.

It then details the pros and cons of arbitration. The clients signed the letter on a page that starts with the words: "THIS LETTER CONTAINS AN AGREEMENT TO RESOLVE DISPUTES BY ARBITRATION."

The firm took on the engagement, which lasted for years and involved details that we have summarized elsewhere.[1] By November 2021, two of the clients felt that the firm had done them wrong, so they sued the firm and three of its lawyers. They alleged that the arbitration clause they signed was not "adequately disclosed." We will refer to all the defendants together simply as Foley.

The procedural history matters greatly to the issue of waiver, so we will lay it out in some detail. On December 13, 2021, Foley's counsel sent the clients' counsel a letter noting that the 2013 engagement letter contained an arbitration clause. He asked whether the clients would agree to stay the litigation and advance their claims in arbitration. "Absent such an agreement, Foley shall file an application to compel arbitration and to stay all judicial proceedings."

No such agreement was forthcoming, and a few days later Foley moved to compel arbitration in a document entitled "Application to Compel Arbitration and Stay Proceeding" that also contained an original answer made "subject to" the motion to compel. It did not set the motion for a hearing.

In January 2022, Foley filed a TCPA motion, entitled "Defendants' Motion to Dismiss Under Tex. Civ. Prac. & Rem. Code § 27.003." On page 1, Foley stated that

---

[1] *See Dernick v. Foley & Lardner LLP*, No. 01-22-00251-CV, 2024 WL 3941011, at *1–4 (Tex. App.—Houston [1st Dist.] Aug. 27, 2024, no pet.) (mem. op.).

it "expressly preserves and does not waive its right to arbitrate any claims not ultimately subject to dismissal."

As part of the effort to reserve its rights to arbitrate, Foley cited the TCPA's short deadlines as a reason for invoking the statute at the beginning of the lawsuit: "[A] litigant must assert its right to dismissal in court no later than 60 days after service of the action, a hearing on such a motion must be set no later than 60 days after service of the motion . . . and the court must rule on such a motion no later than the 30th day after the hearing on such a motion concludes." To support its view that a dismissal motion need not result in waiver, Foley cited *In re Vesta Insurance Group, Inc.*, 192 S.W.3d 759, 764 (Tex. 2006) (per curiam), with a parenthetical stating, "motion to dismiss for lack of standing does not sufficiently invoke judicial process to overcome strong presumption against waiver."

On March 11, 2022, the clients filed a response to the TCPA motion. They regarded the TCPA motion as a tactic intended "solely to delay" and brought by the defendants "because they know that the TCPA dismissal mechanism is arguably not available to them in arbitration." The clients contended that the motion was frivolous and that the court should award them fees.

On March 21, 2022, the trial court sided with Foley and granted the TCPA motion, dismissing the claim and awarding Foley its fees and costs. The clients appealed to this Court. We abated the appeal pending a supreme court decision in

5

another lawyer liability case with a TCPA issue. After that decision, we lifted the abatement, reversed the TCPA ruling, and remanded for further proceedings. *See Dernick v. Foley & Lardner LLP*, No. 01-22-00251-CV, 2024 WL 3941011, at *15 (Tex. App.—Houston [1st Dist.] Aug. 27, 2024, no pet.) (mem. op.). By the time the mandate issued on December 9, 2024, about two years had passed.

The trial court issued a new docket control order on December 18, 2024. On January 6, 2025, Foley filed a notice of hearing and set the motion to compel for an oral hearing on February 7, 2025. The trial court denied the motion, and Foley then brought this appeal.

## Waiver of Right to Arbitrate

The parties agree on the legal framework but disagree about its application. In particular, everyone agrees that a party may waive the right to compel arbitration by substantially invoking the judicial process.

## A. Background Legal Principles

The background principles are well settled. A party seeking to compel arbitration must establish (1) the existence of a valid arbitration agreement and (2) that the claims fall within the scope of the agreement. *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 397 (Tex. 2020). If the party seeking arbitration satisfies its initial burden, the burden shifts to the party resisting

6

arbitration to present evidence supporting a defense to enforcement of the arbitration provision. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018).

"Absent a valid defense to arbitration, 'the trial court has no discretion but to compel arbitration and stay its proceedings once the existence and application of the [arbitration] agreement has been shown.'" *Northpointe LTC, Ltd. v. Durant*, No. 01-22-00215-CV, 2022 WL 17835223, at *3 (Tex. App.—Houston [1st Dist.] Dec. 22, 2022, no pet.) (mem. op.) (quoting *In re Autotainment Partners Ltd. P'ship*, 183 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding)).

We review an order denying a motion to compel arbitration for abuse of discretion. *Henry*, 551 S.W.3d at 115. "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to guiding rules or principles." *Buzbee v. Terry & Thweatt, P.C.*, No. 01-23-00123-CV, 2023 WL 7311212, at *2 (Tex. App.—Houston [1st Dist.] Nov. 7, 2023, pet. denied) (mem. op.). When the relevant facts are undisputed, as they are here, whether a party waived its right to arbitrate is a question of law that we review de novo. *See id.*; *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015); *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002) (orig. proceeding) (per curiam).

## B.    Implied Waiver of the Right to Arbitrate

Implied waiver by litigation conduct is an affirmative defense to enforcement of an arbitration provision. *Henry*, 551 S.W.3d at 115. A party seeking to establish

implied waiver of the right to arbitrate must establish that the party moving for arbitration substantially invoked the judicial process inconsistent with the right to compel arbitration. *See G.T. Leach Builders*, 458 S.W.3d at 511–12.

"The right to arbitrate can be waived by conduct—but not easily." *Thomas Craig Constr., Inc. v. Park Square Condo. Owner's Ass'n*, No. 01-22-00918-CV, 2025 WL 1759012, at *1 (Tex. App.—Houston [1st Dist.] June 26, 2025, no pet.) (mem. op.). A party seeking to establish waiver by conduct has a "heavy burden." *RSL Funding*, 499 S.W.3d at 430. The burden is even heavier if arbitration is demanded at or before litigation starts. *See Polyflow*, 993 F.3d at 307.

The test for waiver is a totality of the circumstances test, as we have explained many times. Our recent opinion in *Thomas Craig* is typical. There we stated that whether a party waives its right to arbitration by substantially invoking the judicial process depends on the totality of the circumstances. 2025 WL 1759012, at *6. We decide the issue on a case-by-case basis taking into consideration a number of non-exclusive factors, including:

- how long the movant waited before moving to compel arbitration;
- the reasons for the movant's delay;
- whether and when, during the period of delay, the movant knew of the arbitration agreement;
- how much discovery the movant conducted before moving to compel arbitration, and whether that discovery related to the merits;

- whether the discovery would be unavailable or useful in arbitration;

- whether the movant asked the court to dispose of claims on the merits;

- whether the movant asserted affirmative claims for relief in court;

- the extent of the movant's engagement in pretrial matters related to the merits (rather than to arbitrability or jurisdiction);

- the time and expense the parties committed to the litigation;

- whether activity in court would be duplicated in arbitration; and

- when the case is set to be tried.

*Id.* (citing *G.T. Leach Builders*, 458 S.W.3d at 512, and *Perry Homes v. Cull*, 258 S.W.3d 580, 590–92 (Tex. 2008)).

In general, however, no single factor is dispositive. *RSL Funding*, 499 S.W.3d at 430. Nor must all or most of these factors be present to support waiver. *See Perry Homes*, 258 S.W.3d at 591. Courts look to the specifics of each case. *Henry*, 551 S.W.3d at 116.

To illustrate how we have applied the totality test and reached varying results, our *Thomas Craig* opinion cited a long list of recent cases.[2] Two of those cases—

---

[2]  *See GRGP, Inc. v. Black Forest Holdings, Inc.*, No. 01-23-00314-CV, 2023 WL 8459522, at *3–6 (Tex. App.—Houston [1st Dist.] Dec. 7, 2023, no pet.) (mem. op.) (finding waiver); *Buzbee v. Terry & Thweatt, P.C.*, No. 01-23-00123-CV, 2023 WL 7311212, at *4–5 (Tex. App.—Houston [1st Dist.] Nov. 7, 2023, pet. denied) (mem. op.) (waiver); *Courtright v. Allied Custom Homes, Inc.*, 647 S.W.3d 504, 516–22 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (waiver); *Turnbull Legal Grp., PLLC v. Microsoft Corp.*, No. 01-20-00851-CV, 2022 WL 14980287, at *9–15

9

*Buzbee v. Terry & Thweatt, P.C.* and *Turnbull Legal Group, PLLC v. Microsoft Corp.*—have some similarities to this case, so we will touch on those decisions briefly before turning to the record.

*Turnbull* involved a dispute between a law firm and Microsoft. The law firm did not immediately seek arbitration. Instead, it asked a trial court for injunctive relief (to obtain the return of certain client files) and "then waited four months after the trial court granted the injunctive relief to initiate arbitration proceedings." *Turnbull*, 2022 WL 14980287, at \*15. The law firm also asserted claims for affirmative relief and sought damages. *Id.* at \*4. "Importantly, the Firm did not seek a judicial ruling on the merits of its claims for affirmative relief, and the trial court did not make an adverse ruling on the Firm's claims before the Firm initiated arbitration proceedings." *Id.* at \*15. This Court found no waiver, despite the firm's successful request for injunctive relief at the outset of the lawsuit. *Id.*

Notice that in *Turnbull*, the case did involve some aspects of "the merits." In granting injunctive relief, the trial court found "a probability of success on the merits." *Id.* at \*5. And the court made some findings that were "relevant to the merits of the Firm's claims for conversion and breach of contract." *Id.* at \*14. The law firm

---

(Tex. App.—Houston [1st Dist.] Oct. 27, 2022, pet. denied) (mem. op.) (no waiver); *Archimedes, Inc. v. Russell*, No. 01-21-00222-CV, 2022 WL 2024851, at \*2–4 (Tex. App.—Houston [1st Dist.] June 7, 2022, no pet.) (mem. op.) (waiver); *Jetall Cos., Inc. v. Sonder USA Inc.*, No. 01-21-00378-CV, 2022 WL 17684340, at \*12–14 (Tex. App.—Houston [1st Dist.] Dec. 15, 2022, no pet.) (mem. op. on reh'g) (no waiver).

also sought discovery that was "relevant to the merits of the Firm's claims for affirmative relief." *Id.* at *12, 15. Nevertheless, considering the totality of the circumstances, this Court found no waiver. *Id.* at *15.

About a year later, we decided *Buzbee*. There a client hired the T&T law firm and signed a contingent fee contract with an arbitration clause, but a day later the client switched to Buzbee's law firm, so the two firms ended up in a dispute about the fees. 2023 WL 7311212, at *1–2. T&T sued Buzbee in court for tortious interference with the fee agreement that contained the arbitration clause. *Id.* at *2. Early in the suit, Buzbee moved to dismiss pursuant to the TCPA. *Id.* The trial court denied the TCPA motion, and Buzbee appealed. *Id.* This Court affirmed. *Id.* Buzbee petitioned for review, but without success. *Id.* Up to that point, nobody had ever asked for arbitration—at all.

When proceedings resumed following the appeal process, Buzbee moved to compel arbitration, "asserting for the first time that T&T was required to arbitrate." *Id.* "Buzbee did not raise the issue of arbitration or otherwise mention arbitration in his answer to T&T's suit, the TCPA motion, or [at] any point prior to the motion to compel arbitration." *Id.* at *2 n.2. We found waiver of the right to arbitrate. *Id.* at *4–5. We reasoned that the factual circumstances showed an attempt to have it both ways. *Id.* at *4. "In total, more than two years elapsed before Buzbee raised the issue

of arbitration." *Id.* at \*5. We added that failing to seek arbitration until after proceeding in litigation to an adverse result is inevitably found to effect a waiver. *Id.*

These cases illustrate how the totality of the circumstances test can lead to different results with only small changes to the various inputs that go into the overall mix of factors.

## C.  Application to This Record

The parties disagree about how all these principles apply here. Foley says that it "timely asserted its right to arbitrate at the outset, and it reiterated that right again in its TCPA Motion." It also "did not engage in any discovery, file any affirmative claims for relief, invoke the TCPA's automatic stay or interlocutory appeal procedures, wait until the eve of trial to raise its arbitration right, or engage in any other pretrial activities that have been present in other cases where a waiver has been found."

In Foley's view, the clients' argument in favor of waiver essentially boils down to one and only one data point: "the fact that Foley filed a TCPA motion, and nothing else." And, it emphasizes, the right to seek dismissal under the TCPA was a tool provided to it by the legislature—one with a stringent timeline requiring it to move under the TCPA quickly and timely or waive its TCPA rights. So, it says, it was in a catch 22 of trying to quickly and timely pursue both avenues available to it, without waiving either (understanding of course that either could fail).

The clients see things differently. They do not comment on Foley's pre-answer demand for arbitration. They concede that Foley filed a motion to compel early on, but they view that motion as legally insubstantial because it was not set first for a hearing: "Although Foley filed its Application before its TCPA motion, Foley did not move to have the trial court consider the Application first. Instead, Foley filed its TCPA motion and set that motion for hearing first." "The first motion that Foley set for hearing and thus 'moved on' was its TCPA motion."

We could go on with all the non-exclusive factors laid out by the supreme court in *Perry Homes* and repeated by our Court in cases like *Thomas Craig*, but the point has been made. Each side makes rational arguments, and each side offers plausible distinctions between this case and the precedents cited by the other side. The issue strikes us as a close one, but close cases go to arbitration.

Or to phrase that point in the language of waiver doctrine more generally, the circumstances must "clearly" demonstrate an intent to waive the right at issue: "[T]he universal test for implied waiver by litigation conduct is whether the party's conduct—action or inaction—clearly demonstrates the party's intent to relinquish, abandon, or waive the right at issue—whether the right originates in a contract, statute, or the constitution. This is a high standard." *LaLonde v. Gosnell*, 593 S.W.3d 212, 219–20 (Tex. 2019).

In light of the "heavy burden" to show waiver—a burden that falls "even more heavily" in cases like this one, where the movant has demanded arbitration before filing any papers in court, *see Polyflow*, 993 F.3d at 307 (quotation omitted)—we conclude that the totality of the circumstances fall short of establishing waiver.

### 1.     Most of the factors do not suggest waiver

Few of the non-exclusive factors that we listed in *Buzbee* and *Thomas Craig* militate in favor of finding waiver here. Was the party who now wants to go to arbitration "the plaintiff (who chose to file in court) or the defendant (who merely responded)"? *Buzbee*, 2023 WL 7311212, at *4. It was the latter. Had it been the former, the case for waiver would be stronger.

What about "the amount of discovery conducted?" *Id.* This record shows no discovery. (Foley asserts that it engaged in no discovery, and that assertion has not been contested.) Had there been profuse discovery, the case for waiver would be stronger. Our decision in *Thomas Craig* pointed out how the American Arbitration Association rules limit discovery, so in finding a waiver, we emphasized the mountain of discovery that the movant had obtained in court. 2025 WL 1759012, at *8–12. We quoted from the hundreds of discovery requests by the movant. Nothing like that has happened here.

Virtually the only factors that arguably suggest waiver are the ones about "how long the movant delayed before seeking arbitration" and "whether the movant

sought judgment on the merits." *See Buzbee*, 2023 WL 7311212, at \*4. These factors undeniably deserve some weight, but they weigh less in favor of waiver here than they did in *Buzbee*, as we shall now explain.

2.  **The factors relating to delay before "seeking arbitration" and seeking judgment "on the merits" weigh less than they did in *Buzbee***

Specifically, one factor that we examine is "how long the movant delayed before seeking arbitration." *Id.* Foley did not delay—at all—"before seeking arbitration." Foley invoked the arbitration clause early and often as the lawsuit got underway. Within just days of the lawsuit being filed, two of the individual Foley lawyers (Beausoleil and Munisteri) voluntarily accepted service pursuant to Rule of Civil Procedure 119 and went out of their way to reserve "all rights they may have to have this dispute submitted to binding arbitration."

Just days after that reservation of rights, counsel for all the Foley defendants sent opposing counsel a letter raising the arbitration clause. The letter quoted the arbitration clause. The letter then urged that "all of the claims the Dernicks have asserted in the Litigation remain subject to mandatory arbitration and the judicial proceedings should be stayed pending the conclusion of arbitration." It requested confirmation from the clients' side that the litigation "shall be stayed" and that the dispute would go "through the arbitration process." "Absent such an agreement,

Foley shall file an application to compel arbitration and to stay all judicial proceedings."

This demand squarely qualifies as seeking arbitration. It was not an effort to have things both ways. It was an effort to have things one and only one way—namely, the way that the clients agreed to in writing when they signed the engagement letter. This effort obviously did not win assent from the clients, who chose to break their promise, but it plainly amounts to "seeking arbitration." So the delay before "seeking arbitration" here is nothing like the multiyear lapse in *Buzbee*.

The clients argue that we should ask not when the motion to compel was filed, but when it was set for a hearing. To begin with, in this inquiry, we have traditionally looked at the motion's filing date and recited the filing date in our opinions as the relevant data point.[3] (This is not to say that whether a party sets a motion for a hearing is not sometimes relevant—even important—in a waiver inquiry. But that alone does not carry the day here.)

At any rate, Foley began "seeking arbitration" even before it filed the motion. Foley tried earnestly to persuade the clients to arbitrate even before Foley put its

---

[3]     *See, e.g.*, *Met Int'l Trading Co. v. 49North LLC*, No. 01-24-00756-CV, 2025 WL 2413079, at *6 (Tex. App.—Houston [1st Dist.] Aug. 21, 2025, no pet.) (mem. op.) (looking to date of motion to compel); *GRGP*, 2023 WL 8459522, at *4 (same); *Northpointe LTC, Ltd. v. Durant*, No. 01-22-00215-CV, 2022 WL 17835223, at *9 (Tex. App.—Houston [1st Dist.] Dec. 22, 2022, no pet.) (mem. op.) (same); *Courtright*, 647 S.W.3d at 517 (same).

answer on file, but that effort went nowhere. To disregard those efforts and to ask only when Foley set the motion for a hearing would be to disregard a material part of the story—especially because Foley did not have the option to just delay filing a TCPA motion until its arbitration demand had been resolved (unlike a substantive motion for summary judgment, for instance).

Then there is the question of asking the trial court for a ruling on the "merits" of the case. TCPA proceedings can foreclose a trial on the merits but are not a legal substitute for one:

- "The TCPA and cases interpreting it, in contrast, make clear that a hearing on a TCPA motion to dismiss is not a trial on the merits." *Sylvester v. Michael*, No. 05-24-00360-CV, 2024 WL 4784400, at *7 (Tex. App.—Dallas Nov. 14, 2024, no pet.) (mem. op.).

- "[A] TCPA motion to dismiss is not a trial on the merits and is not intended to replace either a trial or the summary judgment proceeding established by the Texas Rules of Civil Procedure." *Doe v. Cruz*, 683 S.W.3d 475, 488 (Tex. App.—San Antonio 2023, no pet.) (op. on reh'g) (quoting *Stallion Oilfield Servs. Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 215 (Tex. App.—Eastland 2019, pet. denied)).

- A ruling under the TCPA "is not a merits determination." *Davis v. Gulf Coast Auth.*, No. 11-19-00309-CV, 2020 WL 5491201, at *12 (Tex. App.—Eastland Sept. 11, 2020, no pet.) (mem. op.).

- "Discovery is not permitted at all, unless the trial court finds good cause for 'specified and limited discovery relevant to the motion.'" *Sylvester*, 2024 WL 4784400, at *7 (quoting TEX. CIV. PRAC. & REM. CODE § 27.006(b)).

As Justice Wise has noted, a TCPA ruling does not entail a "full" adjudication of the merits: "[T]he TCPA provides procedures and remedies for summary dismissal of cases *before* a full adjudication of the merits takes place." *Reeves v. Harbor Am. Cent., Inc.,* 631 S.W.3d 299, 307 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); *see also In re Serv. Corp. Int'l*, 85 S.W.3d at 175 (finding no waiver of right to arbitrate: "Relators' efforts in moving to dismiss [under federal Rule 12(b)(6)] and staying discovery were to avoid litigation, not participate in it").

To be sure, the TCPA does have a link to the merits, inasmuch as a TCPA motion requires a "threshold testing of the merits." *HydroChem LLC v. Evoqua Water Techs., LLC*, 650 S.W.3d 6, 10 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (quotation omitted); *see Montoya Frazier v. Maxwell*, — S.W.3d —, No. 02-23-00103-CV, 2025 WL 494699, at *27 (Tex. App.—Fort Worth Feb. 13, 2025, pet. denied) (en banc) ("[A] TCPA dismissal *is* a merits judgment."). But when weighing various factors as part of a totality test, we should not treat a "threshold testing of the merits" as carrying the same weight as a summary judgment motion or the equivalent.

### Conclusion

The burden to show waiver is always a heavy one. *RSL Funding*, 499 S.W.3d at 430. The burden becomes heavier here because of the pre-answer demand for arbitration. *See Polyflow*, 993 F.3d at 307; *Steel Warehouse Co. v. Abalone Shipping*

*Ltd. of Nicosai*, 141 F.3d 234, 238 (5th Cir. 1998); *Sw. Indus. Imp. & Exp., Inc. v. Wilmod Co.*, 524 F.2d 468, 470 (5th Cir. 1975) (per curiam). For the reasons given, we find that burden unmet. The case should go to arbitration. We thus reverse the denial of the motion to compel and leave it to the trial court to sign an appropriate order that compels arbitration and orders a stay in the meantime.[4] Our stay imposed on April 8, 2025, shall terminate upon issuance of the mandate.

David Gunn
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.

Justice Rivas-Molloy, dissenting.

---

[4] Although courts often speak of remanding in this situation, a remand is technically inapt because the cause as a whole remains pending in the trial court. *See, e.g.*, *Chappell Hill Sausage Co. v. Durrenberger*, No. 14-19-00897-CV, 2021 WL 2656585, at *5 n.6 (Tex. App.—Houston [14th Dist.] June 29, 2021, no pet.) (mem. op.). What is before us is not the entire cause but one interlocutory order, which we reverse.