Petition for Writ of Mandamus Denied, Reversed and Remanded, and Opinion
filed March 27, 2007













Petition
for Writ of Mandamus Denied, Reversed and Remanded, and Opinion filed March 27,
2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00974-CV

____________

 

L. BLAND McREYNOLDS AND JUDITH
BAUMAN, Appellants

 

V.

 

LANELLE ELSTON, Appellee

 





 

On Appeal from the 129th
District Court

Harris County,
Texas

Trial Court Cause No. 2006-40533

 





____________

 

NO. 14-06-00980-CV

____________

 

IN RE L. BLAND McREYNOLDS AND
JUDITH BAUMAN, Relators

 

 





 

ORIGINAL PROCEEDING

 





 

 

O P I N I O N

In this consolidated interlocutory appeal and mandamus
proceeding, appellants L. Bland McReynolds and Judith Bauman challenge the
trial court=s order denying their motion to compel
arbitration.  We deny the petition for writ of mandamus and reverse and
remand the trial court=s order under our interlocutory appellate
jurisdiction. 

Background

This proceeding
arises from a dispute over competing arbitration agreements.  On March 1,
1997, McReynolds and Elston executed an agreement incident to their divorce
creating a limited partnership (APartnership
Agreement@) whose Asole intent and
purpose@ was to Aliquidate all of
the partnership assets . . . and distribute the proceeds.@ 
The partnership assets listed in the agreement consist of the parties= community
property and include, among other things, a large tract of real property (the A242 Tract@).  The
agreement names McReynolds as general partner and grants him authority to
control the partnership assets and, upon dissolution, to liquidate and sell or
distribute the assets; however, it does not expressly itemize transactions that
will effect liquidation of the assets.  The agreement names Elston as a
limited partner and gives her various rights to the assets.  The agreement
also contains the following arbitration clause:  

 

If a dispute among the Partners arises out of or relates to this
Partnership, or the breach of this Agreement, and if the dispute cannot be
settled through direct discussions, the parties agree to first endeavor to
settle the dispute in an amicable manner by mediation under the Commercial
Mediation Rules of the American Arbitration Association, before resorting to
arbitration.  Thereafter, any unresolved controversy or claim arising out
of or relating to this Partnership or breach of this Agreement, shall be
settled by arbitration in accordance with the Commercial Arbitration Rules of
the American Arbitration Association.

 

 

The partnership
terminated on December 31, 1998 and subsequently entered liquidation.  At
some point thereafter, a dispute arose, and Elston initiated arbitration
against McReynolds pursuant to the Partnership Agreement, alleging he Aimproperly
liquidat[ed] Partnership assets and treat[ed] them as his sole property.@  As a result
of this arbitration, on August 18, 1999, the parties entered into a ASettlement
Agreement and Full and Complete Joint and Mutual Release@ (ASettlement
Agreement@) to Asettle[] the issues relating to the
various claims made or that could have been made.@  The
Settlement Agreement is multifaceted and contains numerous provisions relating
to the partnership and liquidation of the assets.  First, the agreement
specifically outlines how each partnership asset should be liquidated and
contains residual language stating that Elston Aquitclaims to
McReynolds all other assets of and interests in Partnership assets not disposed
of herein.@  To this end, the agreement states that A[t]he transfers
contemplated by the settlement are intended to effect the liquidation and
dissolution of the Partnership by distribution of all its assets and the
payment or assumption of all its liabilities.@  Second, the
agreement releases Aall . . . claims [by McReynolds and/or
Elston] relating to . . . the Partnership and any and all other matters
relating to assets or liabilities of McReynolds, Elston, or the Partnership.@[1]  Finally,
the Settlement Agreement contains an arbitration clause of its own: 

 

In the event of any dispute under this Settlement Agreement or any
matter relating hereto . . . the parties agree to submit each dispute to Daniel
Goldberg, for binding disposition . . . . If the parties cannot agree on the
rules and procedures for the arbitration then the AAA Rules for Commercial
Disputes shall apply . . . . If Dan Goldberg is unable to act as the arbitrator
and the parties cannot agree on the selection of an arbitrator[,]
the arbitrator shall be selected pursuant to the AAA Rules.  

 

Some years later, a further dispute arose between Elston
and McReynolds.  On October 5, 2005, pursuant to the Partnership Agreement=s arbitration
clause, Elston filed a claim with the American Arbitration Association (the AAAA Arbitration@) against
McReynolds and his current wife, Judith Bauman (collectively AMcReynolds@), asserting
breach of fiduciary duty, breach of contract, and fraud.  Elston contended
that in November 1997, McReynolds and his business associate purchased for
themselves a 68‑acre tract of real property for timber, which was
surrounded by the partnership=s 242 Tract and thus landlocked. 
Elston alleged McReynolds engaged in the following improper conduct in
connection with the purchase:  (1) failing to disclose this Apartnership
opportunity@ during the term of the partnership and Apotentially@ improperly using
partnership funds to acquire the tract, (2) inducing her into executing the
Settlement Agreement by denying ownership of any other property in his
deposition for the arbitration resulting in the agreement, (3) in the years
after the settlement, overcharging her for her share of the partnership
expenses on the 242 Tract by failing to segregate amounts for the 68-acre
tract, and (4) failing to disclose his interest in the 68-acre tract until
after he executed a contract with her for the sale of a larger partnership
tract containing the 68-acre tract.

Thereafter, on October 23 or 24, 2005, McReynolds filed
objections to the AAA Arbitration, and, subject to the objections, an answer
and counterclaims.  McReynolds objected (1) that the acquisition of the
68-acre tract fell outside the scope of the Partnership Agreement=s arbitration
clause, requesting Aa factual and legal determination whether
the purported Arbitration Agreement is binding on the parties to this claim,@ (2) to the Ainvolvement@ of the AAA,
alleging that Elston=s current husband, an attorney of record
in the claim, had close ties to the designated three-arbitrator panel and other
AAA employees, and (3) to the use of a three-arbitrator panel instead of a
single arbitrator.  McReynolds=s counterclaims
included causes of action for libel, slander, breach of contract, and
intentional infliction of emotional Atrauma.@

 

The record reflects that over the next eight months,
McReynolds, through his attorney, John H. Boswell, reasserted his objections in
correspondence to the case manager handling the AAA Arbitration.  On March
29, 2006, Boswell explained that Elston improperly brought the arbitration
before an AAA panel under the Partnership Agreement rather than before Daniel
Goldberg under the Settlement Agreement (the AGoldberg
Arbitration@).  Boswell thus sought dismissal of the AAA
Arbitration, absent an explanation from Elston=s attorneys
regarding why the Partnership Agreement controlled.  On May 15, 2006,
Boswell again informed the case manager that the AAA Arbitration was improper
under the Settlement Agreement and warned that McReynolds would seek injunctive
relief against Elston if the matter could not be resolved.  Thereafter, on
June 28, 2006, the AAA panel conducted a Apreliminary
hearing and initial case management conference,@ which set dates
for both the hearing on McReynolds=s objections and
the final evidentiary hearing for Elston=s claim. 
Pursuant to the objections, neither McReynolds nor Boswell participated in this
conference.  Rather, on the same day, because of the AAA=s Afailure to
acknowledge the clear terms of the Settlement Agreement,@ McReynolds filed
a declaratory judgment action in district court requesting the court to stay
the AAA Arbitration and compel Elston to engage in arbitration under the
Settlement Agreement.  

The AAA panel then heard McReynolds=s objections on
July 28, 2006 and subsequently overruled them.  Thereafter, on September
28, 2006, McReynolds filed a motion to compel the Goldberg Arbitration pursuant
to the Settlement Agreement and to dismiss or stay the AAA Arbitration in
district court.  He maintained that he Arepeatedly
requested that [Elston] submit to contractual arbitration in accordance with
[the Settlement Agreement], but she has refused.@ 
After a hearing, the court denied the motion on October 24, 2006.[2]


McReynolds now challenges the court=s denial of his
motion to compel the Goldberg Arbitration and stay the AAA Arbitration, seeking
relief through a petition for writ of mandamus, or, alternatively, an
interlocutory appeal.  

 

 

Analysis

I.       
Mandamus vs. Interlocutory Appeal

We initially address whether we should review the
interlocutory order denying McReynolds=s motion under our
interlocutory[3]
or mandamus jurisdiction.  The parties agree that the facts of this case
are atypical, if not uniqueCa party
simultaneously seeks to compel arbitration under one agreement and stay
arbitration initiated under another agreement.  McReynolds claims we have
interlocutory jurisdiction over denial of the Amotion to compel@ relief because
the Texas Arbitration Act (ATAA@) expressly grants
interlocutory jurisdiction over denials of applications to compel
arbitration.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 171.098(a)(1) (Vernon 2005).  McReynolds further contends that,
because the TAA requires orders compelling arbitration to include a stay of
other proceedings subject to the arbitration, we have by extension
interlocutory jurisdiction to review a denial of the Amotion to stay@ relief.  See id. ' 171.021(c) (Vernon
2005).  Elston counters that, because McReynolds=s motion sought to
stay pending arbitration and compel arbitration before a different arbitrator,
the court=s order did not deny the Aright to
arbitration@ but merely allowed pending arbitration to
continue.  Therefore, Elston reasons, the trial court=s order does not
squarely fall under either TAA section 171.098(a)(1) or section 171.098(a)(2),
which provides for appeals from grants of applications to stay arbitration made
under 171.023 section.  See id. ' 171.098(a)(2) (Vernon
2005).  As to mandamus, McReynolds concedes that he believes his challenge
to the trial court=s order is appropriate for interlocutory
appeal but has filed the mandamus proceeding Ain an abundance of
caution.@

 

We will first discuss our interlocutory jurisdiction. 
We have jurisdiction to consider appeals of interlocutory orders only if a
statute explicitly so provides.  See Stary v. DeBord, 967 S.W.2d
352, 352B53 (Tex. 1998).  The TAA explicitly
provides that a party may file an interlocutory appeal from the denial of an
application to compel arbitration brought under section 171.021.  See Tex. Civ. Prac. & Rem. Code Ann. ' 171.098(a)(1).  Under section 171.021, the court must, upon
granting an application to compel arbitration, stay Aany proceeding
subject to Section 171.025.@  See id. ' 171.021(c).  Section
171.025 requires the court to stay a Aproceeding that
involves an issue subject to arbitration,@
and such stay Aapplies only to the issue subject to arbitration if
that issue is severable from the remainder of the proceeding.@  See id.
' 171.025 (Vernon 2005). 

We disagree with Elston=s contentions that
the trial court=s order did not deny McReynolds the Aright to
arbitration@ and that an appeal from the denial of his motion does
not fall under section 171.098(a)(1) of the TAA. 
The substance and function of the order viewed in the context of the record
controls our interlocutory jurisdiction.  See Walker
Sand, Inc. v. Baytown Asphalt Materials, Ltd., 95 S.W.3d 511, 515 (Tex. App.CHouston
[1st Dist.] 2002, no pet.).  The record indicates McReynolds sought
not simply to change arbitrators, but rather to enforce his express contractual
right of arbitration under the Settlement Agreement, including arbitration
before Daniel Goldberg.  The motion to compel the Goldberg Arbitration
constitutes the predominant relief sought in McReynolds=s motion, which is
evidenced by the trial court=s order entitled AORDER DENYING
PLAINTIFFS= MOTION TO COMPEL ARBITRATION.@ 
As such, although the trial court=s order allowed
the AAA Arbitration to continue, it denied McReynolds=s potential
contractual right to arbitration under the Settlement Agreement.

 

Moreover, in relation to McReynolds=s request to
compel the Goldberg Arbitration, he asked the court to stay a related
proceeding involving arbitrable issuesCthe AAA
Arbitration.  Parties moving to compel arbitration often simultaneously
request the trial court to stay related proceedingsCalbeit typically
the court=s own litigation proceedingsCand thereafter
appeal from an order denying such relief under Section 171.098.  See
Williams Indus., Inc. v. Earth Dev. Sys. Corp., 110 S.W.3d 131, 133 (Tex. App.CHouston [1st Dist.] 2003, no pet.)
(noting that section 171.098(a)(1) authorizes interlocutory appeal from denial
of application to compel arbitration and to stay proceedings); see, e.g.,
Southwind Group, Inc. v. Landwehr, 188 S.W.3d 730, 735B36 (Tex. App.CEastland 2006,
orig. proceeding); Teal Constr. Co./Hillside Villas Ltd. v. Darren Casey
Interests, Inc., 46 S.W.3d 417, 419 & n.1 (Tex. App.CAustin 2001, pet.
denied).  Accordingly, under these circumstances, we hold that section
171.098(a)(1) of the TAA grants us jurisdiction to
review the trial court=s denial of McReynolds=s motion to compel
the Goldberg Arbitration and stay the AAA Arbitration.

Because we have jurisdiction to hear the interlocutory
appeal under the TAA, and an adequate remedy by appeal therefore exists, we
accordingly deny McReynolds=s petition for writ of mandamus.  See TMI, Inc. v. Brooks, No.14‑05‑00604‑CV,
___ S.W.3d ____, 2007 WL 43814, at *8 (Tex.
App.CHouston
[14th Dist.] Jan. 9, 2007, orig. proceeding).  

II.      
Motion to Compel the Goldberg Arbitration

We now turn to the merits of the appeal to determine
whether the trial court erred in denying McReynolds=s motion to compel
the Goldberg Arbitration and stay the AAA Arbitration.  Under the TAA, a
party moving to compel arbitration must establish (1) the existence of a valid,
enforceable arbitration agreement and (2) that the claims asserted fall within
the scope of that agreement.  Valero Energy Corp. v.
Teco Pipeline Co., 2 S.W.3d 576, 581 (Tex. App.CHouston
[14th Dist.] 1999, no pet.).  If the movant establishes that an
arbitration agreement governs the dispute, the burden then shifts to the party
opposing arbitration to establish a defense to the arbitration agreement. 
See In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (orig.
proceeding).  A party may revoke the agreement only on a ground that
exists at law or in equity for the revocation of a contract.  Tex. Civ. Prac. & Rem. Code Ann. ' 171.001 (Vernon
2005).  If the trial court concludes the movant has met its burden and the
party opposing arbitration has failed to prove its defenses, the trial court
has no discretion but to compel arbitration.  See Brooks, 2007 WL
43814, at *3.  

 

In reviewing a denial of a motion to compel arbitration, we
review factual conclusions under a legal sufficiency or Ano evidence@ standard and
legal conclusions de novo.  See Valero, 2 S.W.3d
at 581.  When the legal interpretation of the arbitration clause, and no fact issue is before the court, de novo
review is appropriate.  See id. at
582.  

The parties do not dispute the existence of the Settlement
Agreement=s arbitration clause.[4] 
They instead disagree over whether Elston=s claims fall
within the scope of this clause and whether McReynolds waived his right to
compel the Goldberg Arbitration and stay the AAA Arbitration.  We address
each issue in turn.    

A.     
Scope of the Settlement Agreement=s Arbitration
Clause

 

McReynolds contends that Elston=s claims fall
under the scope of the Settlement Agreement=s arbitration
clause because the clause purports to cover Aany dispute under
this Settlement Agreement or any matter relating hereto,@ which language
courts have interpreted broadly.  McReynolds further maintains the
Settlement Agreement, because it provides Afinal closure of
the Partnership@ and contains broad release language,
superseded the Partnership Agreement either entirely or to the extent the
arbitration clauses conflict.  Thus, he concludes the arbitration clause
in the Settlement Agreement controls.  Elston responds that, because the
dispute turns on whether the 68-acre tract constitutes a partnership asset, the
arbitrator(s) must interpret the Partnership Agreement, not the Settlement
Agreement, and thus the Partnership Agreement=s arbitration
clause applies.  Alternatively, Elston argues that her claims relate to
the breach of a duty under the Partnership Agreement Ato enhance
Partnership Assets or otherwise protect or enhance the business of the
Partnership,@ which claims accrued after the parties executed the
Settlement Agreement when McReynolds diluted the value of the 242 Tract by
selling it along with the 68-acre tract.  Elston reasons that, since the
68-acre tract did not constitute a partnership asset and the Settlement
Agreement=s arbitration clause applies only to claims related to
partnership assets, her claims do not fall under this provision.  

Determining whether a claim falls within the scope of an
arbitration agreement involves the trial court=s legal
interpretation of the agreement, and we review such interpretations de
novo.  See Ikon Office Solutions, Inc. v. Eifert,
2 S.W.3d 688, 694 (Tex. App.CHouston [14th Dist.] 1999, no
pet.) (orig. proceeding).  In our review,
we focus on the factual allegations of the complaint rather than the legal
causes of action asserted.  Prudential Sec. Inc. v. Marshall, 909
S.W.2d 896, 900 (Tex.
1995) (orig. proceeding).  The burden lies with the party opposing
arbitration to show that the claims fall outside the scope of the arbitration
agreement.  Id.
 There is a presumption favoring arbitration, which generally requires
that we resolve doubts as to the scope of the agreements in favor of
coverage.  See Valero, 2 S.W.3d at 590. 
Thus, a court should not deny arbitration unless it can be said with positive
assurance that an arbitration clause is not susceptible of an interpretation
that would cover the dispute at issue.  Williams Indus., Inc., 110 S.W.3d at 137.  AThe presumption of
arbitrability is particularly applicable where the clause is broad; that is, it
provides for arbitration of >any dispute arising between the
parties,= or >any controversy or
claim arising out of or relating to the contract thereof,= or >any controversy
concerning the interpretation, performance or application of the contract.=@  Babcock
& Wilcox Co. v. PMAC, Ltd., 863 S.W.2d 225, 230 (Tex. App.CHouston [14th
Dist.] 1993, writ denied).  However, the presumption is not without limits
and cannot serve to stretch a contractual clause beyond the scope intended by
the parties or authorize an arbitrator to disregard or modify the plain and
unambiguous provisions of the agreement.  Id.     

 

We conclude that Elston, in contending that her claims fall
under the Partnership Agreement=s arbitration clause, failed to meet her
burden to show that her claims fall outside the scope of the Settlement
Agreement=s arbitration clause.  The totality of the
language in the Settlement Agreement reveals that it supersedes the Partnership
Agreement, at least to the extent the two agreements conflict.  For
example, the Partnership Agreement generally discusses the liquidation and
distribution of partnership assets, while the Settlement Agreement specifically
outlines how each asset should be liquidated and includes a broad residual
clause covering all other partnership assets not expressly addressed. 
Indeed, the Settlement Agreement expressly states that the transfers are intended
to Aeffect@ the liquidation
and dissolution of the Partnership, which was the Asole intent and
purpose@ of the
Partnership Agreement.  Moreover, the Settlement Agreement broadly
releases claims Arelating to@ the Partnership
and Aall other matters
relating to assets or liabilities of McReynolds, Elston, or the Partnership.@ 
Accordingly, to the extent the Settlement Agreement=s arbitration
clause conflicts with the Partnership Agreement=s clauseCby requiring
arbitration before Daniel GoldbergCthe Settlement
Agreement controls.  See Transcore Holdings, Inc. v. Rayner, 104
S.W.3d 317, 322B23 (Tex. App.CDallas 2003, pet.
denied) (orig. proceeding) (holding that parties did not intend to be bound by
arbitration agreement in prior agreement, given that later agreement contained
broad release of Aany and all claims@ and provision
requiring parties to bring any action Aarising out of, or
relating to@ later agreement in court); Courage Co., L.L.C. v.
Chemshare Corp., 93 S.W.3d 323, 333 (Tex. App.CHouston [14th
Dist.] 2002, no pet.) (holding that when later contract deals with same subject
matter as initial contract made by same parties, but does not specify whether
or to what extent it is intended to operate in discharge or substitution, both
contracts must be interpreted together, and, to extent they are inconsistent,
later one prevails).  
         

 

Furthermore, the Settlement Agreement=s arbitration
clause itself contains sweeping language encompassing Elston=s claims, as the
agreement purports to cover claims arising under that agreement or Aany matter
relating hereto.@  Courts have interpreted such
language to require only that a claim Atouch upon@ or be Afactually
intertwined@ with matters covered by the arbitration
agreement.  See Marshall, 909 S.W.2d at 900; AutoNation USA
Corp. v. Leroy, 105 S.W.3d 190, 195B96 (Tex. App.CHouston [14th
Dist.] 2003, orig. proceeding); see also Pennzoil Exploration & Prod.
Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998) (noting that
such language is Acapable of expansive reach@).  Each of
Elston=s allegations
involve, either directly or indirectly, the acquisition, sale, and distribution
of partnership assets, which clearly relate to, touch upon, and are factually
intertwined with the Settlement Agreement=s subject
matter.  See Marshall, 909 S.W.2d at
900; Dewey v. Wegner, 138 S.W.3d 591, 602B03 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  As such, given the breadth of the Settlement
Agreement and its arbitration clause, and the strong presumption in favor of
arbitration, we cannot say with positive assurance that such clause is not
susceptible of an interpretation covering Elston=s
claims.          

B.     
Waiver

Elston further contends McReynolds waived his right to stay
the pending arbitration by Aparticipating in the arbitration for a
year before filing the motion [to stay the AAA arbitration].@  McReynolds
counters that he expressly took each action in the AAA Arbitration  Asubject to@ his original
objections, which he filed less than twenty days after Elston initiated the
proceeding.  Whether a party has waived its right to arbitrate presents a
question of law that we review de novo.  Sedillo v.
Campbell, 5 S.W.3d 824, 826 (Tex. App.CHouston [14th Dist.] 1999,
orig. proceeding).  Waiver of an arbitration right must be
intentional.  EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 89 (Tex. 1996) (orig.
proceeding).  Merely taking part in litigation is not enough unless a
party has (1) substantially invoked the judicial process (2) to its opponent=s prejudice. 
In re Vesta Ins. Group, Inc., 192 S.W.3d 759, 763 (Tex. 2006) (orig. proceeding).[5] 
Because of the strong federal and state policies favoring arbitration, a presumption
exists against the waiver of a contractual right to arbitration.  See Marshall, 909 S.W.2d at 898. 

1.      
Substantial Invocation of the AAA Arbitration

Elston claims the following actions establish that
McReynolds substantially invoked the AAA Arbitration:  (1) waiting an Ainordinate@ amount of time to
file the motion to stay the AAA Arbitration, which McReynolds filed after the
AAA panel heard his objections to the arbitration, (2) filing a counterclaim
and paying the filing fee, (3) requesting documents from the AAA and complying
with AAA panel=s order to produce documents, (4) allowing the AAA to
pre-screen arbitrators and objecting to arbitrators chosen for the panel, (5)
participating in a conference call to discuss the appointment of the panel,
scheduling, discovery, and other parameters of the arbitration, and (6)
requesting the AAA panel for a factual and legal determination of whether the
Partnership Agreement=s arbitration clause controlled.  

To substantially invoke the judicial process, a party must
make a specific and deliberate act after suit has been filed that is
inconsistent with its right to arbitrate.  Sedillo, 5 S.W.3d at 827.  Thus, a party does not demonstrate an
intent to waive arbitration by consistently and timely seeking to invoke its
contractual right to arbitration.  See Marshall, 909 S.W.2d at
898. Similarly, purely defensive measures do not substantially invoke
the judicial process.  See Transwestern Pipeline Co.
v. Horizon Oil & Gas Co., 809 S.W.2d 589, 593 (Tex. App.CDallas
1991, writ dism=d w.o.j.) (citing filing of general denial to
preclude default judgment and filing of protective order in response to
discovery request as examples of defensive measures ); see also In re Serv.
Corp. Int=l, 85 S.W.3d 171, 174 (Tex. 2002)
(orig. proceeding) (holding that objecting to trial setting showed intent to
avoid rather than to judicial process).  Delay alone generally does not
establish waiver.  In re Vesta Ins. Group, Inc.,
192 S.W.3d at 763. 

 

We disagree that McReynolds=s actions
substantially invoked the AAA Arbitration.  Elston asserts that McReynolds
waited nearly a year from the time she filed the AAA Arbitration to file a
motion to stay that proceeding and only after the panel had ruled on his
objections.  Notwithstanding that McReynolds filed a declaratory judgment
seeking a stay of the arbitration before the hearing on his objections, courts
have held that delays in asserting contractual rights to arbitration far longer
than one year do not constitute waiver.  See id. (holding that litigating in court for two years did not
amount to waiver).  Moreover, the record is replete with correspondence
and other documents supporting McReynolds=s position that he
took each action expressly subject to his objections or in an otherwise
defensive posturing.  McReynolds expressly filed his answer and
counterclaims Asubject [to]@
the objections in the same pleading.  See Courage Co., L.L.C., 93
S.W.3d at 337 (finding no waiver where party made jurisdictional objections and
sought dismissal in same responsive pleading containing claims on merits
because claims on merits were brought subject to court=s ruling on
jurisdictional objections).  Further, the documents McReynolds requested
pertained to Elston=s husband=s potential
conflict with the AAA panel, indicating that such request was defensive and
made in support of his objections.  Also, even if McReynolds complied with
the panel=s order to produce documents relating to the 68-acre
tract, which is unclear from the record, engaging in minimal discovery does not
alone establish waiver.  See In re D. Wilson Constr. Co., 196
S.W.3d 774, 783 (Tex.
2006) (orig. proceeding); In re Vesta Ins. Group, Inc., 192 S.W.3d at
763.  In addition, to the extent Elston suggests McReynolds=s objections to
the arbitrators amounted to participating in the selection of arbitrators, such
actions were made in the context of his objections and request that the AAA
panel dismiss the arbitration; thus, they were defensive in nature.  Cf.
Bergquist Co. v. Sunroc Corp., 777 F. Supp. 1236, 1251 (E.D. Pa. 1991)
(finding party did not waive objections to arbitration proceeding by
participating in selection of arbitrators under express protest that matter was
not subject to arbitration).  Accordingly, we cannot say that McReynolds=s actions in the
AAA Arbitration were inconsistent with his right to arbitrate under the
Settlement Agreement.  

2.      
Prejudice to Elston 

Finally, we note that even if McReynolds substantially
invoked the AAA Arbitration, Elston has not shown prejudice sufficient to
establish waiver.[6] 
Elston claims she has suffered prejudice due to McReynolds=s delay in filing
the motion to stay the AAA Arbitration and Asimply by having
to fight McReynolds in two forums.@  Loss of
time alone does not constitute sufficient prejudice to establish waiver.  See
In re BP Am. Prod. Co., 97 S.W.3d 366, 372
(Tex. App.CHouston [14th Dist.] 2003, orig. proceeding). 
Moreover, generalized complaints about delay and expense, absent explanation
and evidentiary support, will not establish prejudice.  See
id.; Williams Indus., Inc., 110 S.W.3d at 139.  

 

Furthermore, the cases on which Elston relies are
distinguishable.  See Cent. Nat=l Ins. Co. of Omaha v. Lerner, 856 S.W.2d 492,
495 (Tex. App.CHouston [1st Dist.] 1993, orig. proceeding); Marble
Slab Creamery, Inc. v. Wesic, Inc., 823 S.W.2d 436, 438B39 (Tex. App.CHouston [14th
Dist.] 1992, no writ).  Those cases involve parties who filed claims or
counterclaims and conducted extensive pretrial discovery unavailable in
arbitration, causing the opposing parties to incur significant discovery costs
and attorney=s fees.  See Lerner, 856 S.W.2d at 495; Wesic,
823 S.W.2d at 438.  Here, McReynolds did not initiate the AAA Arbitration
and thereafter make extensive discovery requests.  Rather, Elston
initiated the AAA Arbitration, and McReynolds timely filed and repeatedly stood
on objections, requesting discovery only to support his objections and
submitting to discovery only over objection.  Therefore, any costs Elston
has incurred are Aself-inflicted@ in the sense that
she incurred them not in response to McReynolds=s actions but,
rather, largely in her prosecution of the AAA Arbitration over McReynolds=s repeated
objections.  See In re Vesta Ins. Group, Inc., 192 S.W.3d at 763
(finding no prejudice where party sent far more discovery requests than
received); Transwestern Pipeline Co., 809 S.W.2d at 593 (finding no prejudice
where party voluntarily incurred and assumed liability for legal fees in
deciding to initiate and prosecute lawsuit).  Moreover, Elston does not
suggest that the discovery and costs incurred in the AAA Arbitration would not
inure to the benefit of the Goldberg Arbitration.  See In re Vesta Ins.
Group, Inc., 192 S.W.3d at 763 (in finding no prejudice, noting that party
opposing arbitration made no allegation that pretrial discovery already
conducted would not be useful in arbitration); Transwestern Pipeline Co.,
809 S.W.2d at 593 (in finding no prejudice, noting that nothing in record
showed that litigation expenses would not have been incurred during arbitration
or would not have provided benefit to party opposing arbitration in resolving
dispute in arbitration).  

Conclusion

We conclude the trial court erred in denying McReynolds=s motion to compel
the Goldberg Arbitration and stay the AAA Arbitration.  Elston=s claims fall
under the scope of the Settlement Agreement=s arbitration provision
because of the broad nature of the clause and the Settlement Agreement. 
McReynolds did not waive his right to the Goldberg Arbitration because he did
not substantially invoke the AAA Arbitration to Elston=s prejudice. 
Therefore, we sustain McReynolds=s issues, and we
reverse and remand the trial court=s interlocutory
order for proceedings consistent with this opinion.  

 

 

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered and Opinion filed March
27, 2007.

Panel consists of Justices Yates,
Anderson, and Hudson.














[1]  The Settlement Agreement also contains the following
release language:

 

Elston . . . does hereby RELEASE, ACQUIT AND FOREVER DISCHARGE
[McReynolds] and the Partnership of and from any and all claims, demands,
causes of action, damages, loss, or expense, of whatsoever kind or character,
in tort or in contract, under the statutes, constitutions, or the common law,
state or federal, including, but not limited to, causes of action that may be
created or recognized after this date by court decision, statute or regulation,
which have been or could have been asserted as one of Elston=s Claims, whether known or unknown,
existing as of the date of execution hereof and not including Claims arising
out of this Settlement Agreement. 





[2]  McReynolds then filed an emergency motion for temporary
relief with this court, seeking a stay of the AAA Arbitration set for November
7, 2006.  We granted his motion on November 3, 2006, pending our final
resolution of this proceeding.





[3]  Neither arbitration agreement specifies whether
the Texas Arbitration Act or the Federal Arbitration Act governs; however, the
parties agree that because neither agreement invokes interstate commerce, the
federal act does not apply.  See In re Educ. Mgmt. Corp., 14 S.W.3d
418, 422 (Tex. App.CHouston [14th Dist.] 2000, orig. proceeding) (holding
that question of whether transaction affects interstate commerce, and thus
whether federal act governs, is one of fact where arbitration agreement is
silent as to application of federal or Texas act).  Therefore, we address
whether we have interlocutory jurisdiction only under the Texas Arbitration
Act.     





[4]  Elston makes passing reference to her Afraud in the inducement@ claim in her briefing on the scope of the Settlement Agreement=s arbitration clause.  She appears to refer to
her claim that McReynolds fraudulently induced her into signing the Settlement
Agreement by both failing to disclose and affirmatively denying his ownership
of other property, namely the 68-acre tract.  We construe this as an
argument that McReynolds=s alleged fraud induced her to enter the entire
agreement, not the arbitration clause itself.  Accordingly, we conclude
that the arbitrators, not this court, should properly decide this issue.  See
In re FirstMerit Bank, N.A., 52 S.W.3d 749, 756 (Tex. 2001) (orig. proceeding); Dewey v.
Wegner, 138 S.W.3d 591, 602 (Tex. App.CHouston
[14th Dist.] 2004, no pet.).  Therefore, to the extent she attempts to
challenge the existence of the Settlement Agreement=s arbitration clause by attacking the validity of the
entire agreement, we overrule her contention.  





[5]  We recognize that both state and federal waiver
cases typically involve an allegation that a party waived its contractual right
to arbitration by substantially invoking the Ajudicial@ process in parallel litigation.  Nevertheless,
we find such cases applicable in this unusual but analogous context, involving
an allegation that a party waived its contractual right to arbitration by
substantially invoking the arbitration process in a parallel or competing
arbitration.  Cf. Bergquist Co. v. Sunroc Corp., 777 F. Supp. 1236,
1251 (E.D. Pa. 1991) (holding that party challenging arbitration award for lack
of agreement to arbitrate did not agree to arbitrate or waive its objection to
arbitration proceeding by participating in initial phases of arbitration
process because party Ahad no other choice@). 






[6]  We acknowledge that this and other courts have
held that, although waiver is a question of law,  the
predicate element of prejudice is a question of fact, and courts differ over
which standard of review to apply to this question.  See
Williams Indus., Inc., 110 S.W.3d at 136 & n.8.  Because
these issues do not affect our conclusion, we need not address them.  See
generally id. at 136.