In re BP AMERICA PRODUCTION
COMPANY, f/k/a Amoco Production
Company and TOC–Rocky Mountains,
Inc., Relators.

No. 14–02–00871–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 31, 2003.

Steven B. Harris, Lawrence P. Dempsey, Houston, for Relators.

John B. Thomas, Laura Rowe, Houston, for Appellees.

Panel consists of Justices EDELMAN, SEYMORE, and GUZMAN.

## OPINION

RICHARD H. EDELMAN, Justice.

BP America Production Company, f/k/a Amoco Production Company, and TOC–Rocky Mountains, Inc. (collectively, "BP")[1] seek a mandamus directing the trial court to vacate its order denying BP's motion to compel arbitration and to enter an order compelling arbitration of all issues in the underlying lawsuit (the "lawsuit"). We conditionally grant the petition for mandamus.

**1.** Throughout the opinion, unless otherwise indicated, references to a company will also refer to its predecessor companies, if any.

**2.** *See* Federal Arbitration Act, 9 U.S.C.A. §§ 1–16 (West 1999).

**3.** *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–.098 (Vernon 1997 & Supp.2003).

## Background

The lawsuit was filed against BP by real-parties-in-interest Occidental Permian Ltd. ("LP"), a limited partnership, and Occidental Permian Manager, L.L.C. ("LLC"), its general partner. LLC and LP seek a declaration that they own and are entitled to exercise certain contractual "call" rights (the "calls"), which are rights of first refusal to purchase crude oil from certain third-party producers at predetermined prices. LLC and LP also seek damages from BP for continuing to exercise the calls in denial of LLC and LP's alleged rights to do so. BP filed a motion to compel arbitration of the dispute, which was denied by the trial court. The parties do not contest that the arbitration issue in this case arises under the Federal Arbitration Act[2] (the "FAA") rather than the Texas Arbitration Act[3] and, thus, that the trial court's ruling is reviewable by mandamus[4] rather than interlocutory appeal.[5]

## Standard of Review

▇▇▇▇ A party seeking to compel arbitration by mandamus must establish both the existence of an arbitration agreement subject to the FAA and that the claims at issue fall within the scope of the arbitration agreement. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex.2002) (orig. proceeding). If the arbitration agreement encompasses those claims and there are no defenses to enforcement of the arbitration obligation, the court has no discretion but to compel arbi-

**4.** *See In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex.2002) (orig. proceeding).

**5.** *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a) (Vernon Supp.2003).

tration and stay its own proceedings. *Id.* Where a trial court erroneously denies a motion to compel arbitration under the FAA, the movant has no adequate remedy at law and is entitled to mandamus relief. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 753 (Tex.2001) (orig. proceeding).

■■■ When a party asserts a right to arbitrate under the FAA, the question whether the dispute is subject to arbitration is determined under federal law. *Prudential Secs. Inc. v. Marshall,* 909 S.W.2d 896, 899 (Tex.1995) (orig. proceeding). As a matter of federal law, any doubts concerning the scope of arbitrable issues are resolved in favor of arbitration, whether pertaining to the construction of the contract or a defense to arbitration, such as waiver. *In re Serv. Corp. Int'l,* 85 S.W.3d 171, 174 (Tex.2002) (orig. proceeding).

**Existence of an Arbitration Agreement**

■■ In 1997, LLC and LP [6] were created by BP and Shell Oil Company and its affiliates (collectively, "Shell") pursuant to a master agreement. An assignment agreement (the "assignment") was also entered into whereby BP conveyed various oil and gas related assets to LP, allegedly including the calls. BP and Shell thereafter sold a controlling interest in LLC and LP to Occidental Petroleum Corporation ("OPC"). The agreements evidencing this sale included a purchase and sale agreement (the "PSA") and a closing agreement. Article 16.1 of the PSA contains the arbitration provision (the "arbitration provision") upon which BP relies in this proceeding. However, because LLC and LP were not parties to the PSA, our first issue is whether LLC and LP are nevertheless bound by the arbitration provision, *i.e.,* whether an arbitration agreement exists between these parties.

Although LLC and LP were not parties to the PSA, they were parties to the closing agreement (as was BP). The closing agreement: (1) recites that it is "expressly contemplated by" the PSA; (2) refers to various provisions of the PSA, which contemplate certain releases, amendments and terminations of various existing agreements, and assumption of certain liabilities; (3) sets forth the terms necessary to effect those changes; and (4) contains the following merger provision (the "merger provision"): "This Agreement, together with the [PSA] and the other Operative Documents [defined in the PSA] supersede all prior … agreements … between the Parties with respect to the subject matter hereof and constitute the entire understanding and agreement between the Parties with respect thereto."

■■ Instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the instruments were executed at different times and do not expressly refer to each other, and a court may determine as a matter of law that multiple documents comprise a single written contract and construe them accordingly. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 840 (Tex.2000). In this case, the closing agreement was necessary to the PSA and has no apparent purpose other than to facilitate the transaction set forth in the PSA. Therefore, the closing agreement and PSA can hardly be treated other than as two parts of a single agreement. In addition, in the merger provision, LLC and LP expressly agreed that the closing agreement, PSA, and Operative Documents are the agreement of the parties with respect to the relevant subject matter and thus that

---

**6.** *See supra* note 1.

LLC and LP are thereby bound by the terms of those agreements. Because the arbitration provision in the PSA is one of those terms, we conclude that LLC and LP are bound by it.

### Scope of the Arbitration Agreement

▇▇▇▇ The policy favoring enforcement of arbitration agreements is so compelling that a court should not deny arbitration unless it can be said with positive assurance that the arbitration clause is not susceptible to an interpretation that would cover the dispute at issue. *Prudential,* 909 S.W.2d at 899. To determine whether a party's claims fall within the scope of an arbitration agreement, we focus on the complaint's factual allegations rather than the legal causes of action asserted. *First-Merit,* 52 S.W.3d at 754. To be within the scope of an arbitration provision, the allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision. *See Prudential,* 909 S.W.2d at 900. The burden of establishing that a claim falls outside the scope of an arbitration agreement is on the party opposing arbitration. *Prudential,* 909 S.W.2d at 900.[7]

In this case, the PSA requires arbitration of "any and all disputes arising under, related to, or in connection with this Agreement. . . ." In that the closing agreement is part of the same overall agreement as the PSA, it logically follows that a dispute concerning the closing agreement would also be related to the PSA for purposes of the arbitration provision.

The parties mainly dispute: (1) whether the calls were among the assets conveyed by BP to LLC and LP in the assignment; (2) whether the calls were among the assets included in LLC and LP when BP and Shell sold their interests in them to OPC; (3) whether OPC possessed and exercised an option to cancel the agreement that had, until then, given BP the right to exercise the calls; and (4) whether LLC and LP have recourse against BP under the applicable agreements to assert a claim to the calls. LLC and LP contend that the dispute is not within the scope of the arbitration provision because their right to the calls will be determined under the assignment, not under the PSA. BP asserts that the PSA and closing agreement specify what assets were held by LLC and LP at the time of their sale to OPC and release BP from any liability related to the assignment. Therefore, according to BP, the lawsuit will principally involve a dispute regarding the PSA, which is subject to arbitration.

Without intruding on the merits of this case, we cannot determine whether its resolution will ultimately turn on the assignment, the PSA and closing agreement, or some combination thereof. However, the relief sought by LLC and LP's petition is not necessarily limited to a declaration of what they received in the assignment, but extends to whether they currently own and are entitled to exercise the calls and whether BP is liable to them for continuing to exercise the calls after its rights to do so were allegedly cancelled. In that regard: (1) articles 1.36 and 1.136 of the PSA define the assets and properties held

---

7. We acknowledge the apparent inconsistency among Texas Supreme Court opinions regarding which party has the burden to establish whether the underlying claims are within the scope of the arbitration agreement. *Compare J.D. Edwards,* 87 S.W.3d at 549 ("a party seeking to compel arbitration by mandamus must establish . . . that the claim at issue falls within the scope of . the arbitration agreement") *with Prudential,* 909 S.W.2d at 900 ("The burden was on [the parties opposing arbitration] to show that their claims fell outside the scope of the arbitration agreement.").

by LP and LLC at the time of their sale to OPC to include those listed on Exhibit A of the PSA; (2) the merger provision (discussed in the preceding section) purports to delimit the agreements remaining in effect between the parties (among which the assignment is not listed); (3) LLC and LP rely upon an exhibit to the closing agreement to establish that the assignment remains in effect; and (4) section 4.1 of the closing agreement provides that "[e]ffective as of Closing, except for the . . . obligations . . . in the [PSA] and in this Agreement, [OPC on behalf of itself, LLC, and LP] . . . releases . . . [BP] from any and all Claims . . . with respect to Contracts or arrangements between [LP or LLC] . . . and [BP] . . . attributable to pre-Closing periods. . . ." Although it is again beyond the scope of this proceeding to determine whether or how any of these provisions might ultimately bear on the dispute, their meaning and effect will likely have a central role among the matters contested by the parties. Under these circumstances, resolving any doubt in favor of arbitration, as we must, we cannot say with positive assurance that the arbitration provision is not susceptible of an interpretation that would cover the dispute at issue,[8] or that LLC and LP's allegations are not at least factually intertwined with arbitrable claims or do not otherwise touch upon the subject matter of the PSA.[9] Therefore, the record does not demonstrate that LLC and LP's claims are unrelated to the PSA so as to be outside the scope of its arbitration provision.

## Waiver

■■■■ Whether a party has waived its arbitration rights under the FAA is a question of law. *In re Serv. Corp.*, 85 S.W.3d at 174.[10] There is a strong presumption against such waiver. *Id.* Accordingly, under the FAA, a party does not waive a right to arbitration merely by delay or even by substantially invoking the judicial process[11] unless either causes prejudice to the opponent. *Prudential*, 909 S.W.2d at 898–99. The burden of establishing a defense to arbitration is on the party opposing it. *FirstMerit*, 52 S.W.3d at 756.

LLC and LP contend that BP: (1) waived its right to arbitrate by refusing LLC's pre-lawsuit demand to arbitrate (pursuant to an arbitration clause in the master agreement) and asserting then that it had no agreement with them "to arbitrate this or any other dispute"; and (2) waived its right to seek mandamus by waiting two months after the trial court's order denying arbitration to do so.[12] Un-

8. *See Prudential*, 909 S.W.2d at 899.

9. *See id.* at 900.

10. Whereas the Texas Supreme Court has thus indicated that defenses to arbitration under the FAA, such as waiver, are to be decided by the courts, the United States Supreme Court has held that allegations of waiver, delay, or like defenses to arbitrability should instead be decided by the arbitrator. *See Howsam v. Dean Witter Reynolds, Inc.*, —— U.S. ——, 123 S.Ct. 588, 592, 154 L.Ed.2d 491 (2002).

11. A party invokes the judicial process only to the extent it litigates a specific claim that it subsequently seeks to arbitrate. *In re Serv.*

*Corp.*, 85 S.W.3d at 175. LLC and LP do not assert that BP has substantially invoked the judicial process in this case.

12. LLC and LP do not cite a case in which the Texas Supreme Court has: (1) found that a right to arbitration or a mandamus remedy to enforce it has been waived; or (2) even denied review of a court of appeals decision so holding. The only cases they cite in which an arbitration right was waived involved a substantial invoking of the judicial process, and the only case they cite in which a mandamus remedy was waived regarding arbitration involved a ten month delay in challenging an order *compelling* arbitration, none of which is involved in this case. *See Sedillo v. Campbell*,

der the foregoing authorities, and the strong presumption in favor of arbitration and against its waiver, it appears that such actions can result in waiver only if LLC and LP have demonstrated that it caused them prejudice.[13]

Apart from the loss of time, which is not alone sufficient prejudice to produce waiver, LLC and LP claim that they have been harmed by BP's actions in that: (1) they have incurred additional expense from BP's reversal of its position on arbitration; (2) they have been substantially prejudiced in their ability to deal with the third parties who granted the call rights; and (3) they have lost the benefit of the calls as to the estimated four million barrels of oil produced that would have been subject to them.

As to the first item, LLC and LP do not specify the type or amount of expense they claim to have incurred or cite any evidence which substantiates it. To the extent LLC and LP had a valid right to arbitration under the master agreement (which is not before us in this proceeding), recourse to the courts to enforce that right was available to them,[14] and article 17.12 of the master agreement states that the party who unsuccessfully opposed arbitration thereunder would pay all costs incurred in connection with a court proceeding necessary to compel it. If LLC and LP chose not to avail themselves of that recourse or had no such valid right, they cannot blame BP for their expense in seeking, but then abandoning their claim for, arbitration under the master agreement in favor of a court action. Nor can they hold BP responsible for their subsequent expense to unsuccessfully oppose arbitration under the PSA.

Similarly, LLC and LP have not particularized, or cited evidence to support, their claim of impaired dealings with the third party producers. As with their alleged, but also unsubstantiated, claim of loss on calls attributable to oil produced in the interim, this ground of prejudice assumes that LLC and LP have a valid right to the calls in the first place, which remains to be determined. Moreover, to the extent they succeed in establishing that right, any damages they have suffered from being denied it would seemingly be recoverable in the arbitration and not lost as a result of any actions by BP that were inconsistent with its right to arbitration.[15]

---

5 S.W.3d 824, 826–29 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (holding that Sedillo waived right to arbitration by filing bankruptcy proceeding in bad faith to avoid same claim, then filing amended answer with counterclaim, request for jury trial, summary judgment response, and motion to set aside deemed admissions, all before filing motion for arbitration); *Quanto Int'l Co. v. Lloyd,* 897 S.W.2d 482, 488 (Tex.App.-Houston [1st Dist.] 1995, orig. proceeding) (denying mandamus relief from order compelling arbitration because Quanto had designated an arbitrator and waited 10 months without justification to seek mandamus to oppose arbitration); *Cent. Nat'l Ins. Co. v. Lerner,* 856 S.W.2d 492, 494–95 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding) (holding that CNIC waived arbitration right where its motion to compel was filed more than 17 months after it was sued,

and after CNIC had filed an answer and counterclaim, propounded and received responses to discovery requests, and joined in a request for a preferential trial setting).

13. *See In re Serv. Corp.,* 85 S.W.3d at 173–74 (holding that two year delay in moving to compel arbitration did not amount to waiver absent prejudice to opponent caused by the delay).

14. *See* Tex. Civ. Prac. & Rem Code Ann. § 171.021(a) (Vernon Supp.2003).

15. Moreover, in this mandamus proceeding, besides opposing arbitration, LLC and LP have also opposed a stay of the lawsuit, so that their discovery can proceed now and under the rules of trial procedure, rather than being delayed and possibly being limited by

Under these circumstances, LLC and LP have not demonstrated prejudice that would result in BP waiving its right to arbitration or a mandamus remedy to enforce it. Accordingly, we: (1) conclude that the trial court abused its discretion in denying BP's motion to compel arbitration and that BP has no adequate remedy by appeal; (2) grant BP's petition for mandamus; and (3) direct the trial court to vacate its June 24, 2002, order denying BP's motion to compel arbitration and to enter an order granting that motion.[16]

the applicable rules of arbitration procedure. In that regard, rather than being prejudiced by any lapse of time since the lawsuit was filed, LLC and LP have benefitted from it.

16. A formal writ of mandamus will not issue unless the trial court fails to comply with this conditional order.