02-10-219-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00219-CV

 

 


 
 
 David Bridges
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Alcon Laboratories, Inc.
 
 
  
 
 
 APPELLEE
 
 


 

 

------------

 

FROM THE 67th
District Court OF Tarrant COUNTY

------------

MEMORANDUM
OPINION[1]

----------

          Appellant
David Bridges appeals the trial court’s order granting summary judgment in
favor of Alcon Laboratories, Inc. (Alcon).  We will affirm the trial court’s
judgment.

Background
Facts

          Bridges
was a project supervisor with Alcon for almost twenty-eight years until, along
with many other employees, he was laid off in a mass force reduction on February
11, 2009.  On the day of the layoffs, Bridges was called into a meeting where he
was presented with two documents:  one entitled “Separation Agreement” and one
entitled “General Release.”  The Separation Agreement provided that Bridges
would receive certain benefits until April 15, 2009, and other additional
benefits if he agreed to sign the General Release.  Bridges signed the
Separation Agreement and was given forty-five days to consider and sign the
General Release.  After the meeting, Bridges turned in his ID badge and parking
pass in accordance with the Separation Agreement and was escorted from the
premises.

          On
February 14, 2009, a Saturday, Bridges and his wife stopped by Alcon on their
way home from a birthday party to look for a jacket and prescription sunglasses
that Bridges had left.  Bridges’s wife was still employed by Alcon on that
date, as she had been for fourteen years.  They used the wife’s ID badge to
enter the building.  While there, Bridges took from his former locker a tool
bag containing various tools which he believed belonged to him.  Three days
later, on February 17, 2009, Bridges signed and returned the General Release.

          On
February 26, 2009, Alcon discovered the missing tools and security camera
footage revealed that Bridges had taken them.  The company contacted Bridges,
who returned the tools.  Alcon then decided to terminate Bridges’s employment
for violating various terms of Alcon’s employment policies, including “removing
or misappropriating property . . . from the premises or from one area to
another without authorization;” “removing company property . . . from the
premises (physically or electronically) without authorization;” “entering
company premises in any way without proper authorization;” and “bringing
guests, family members, vendors and former employees to the work area.”  Based
on these violations of company policies, Alcon refused to provide the benefits
outlined in the General Release.

          Bridges
filed suit for breach of contract.  Alcon moved for summary judgment on the
grounds that Bridges violated terms of the Separation Agreement, which is part
of the same unified contract as the General Release.  Because he breached the
contract, Alcon argued, Bridges was not entitled to enforce it.  The trial
court granted Alcon’s motion for summary judgment, and this appeal followed.

Standard
of Review

We
review a summary judgment de novo.  Travelers Ins. Co. v. Joachim, 315
S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light
most favorable to the nonmovant, crediting evidence favorable to the nonmovant
if reasonable jurors could, and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge
every reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).  A defendant who
conclusively negates at least one essential element of a cause of action is
entitled to summary judgment on that claim.  Frost Nat’l Bank v. Fernandez,
315 S.W.3d 494, 508 (Tex. 2010); see Tex. R. Civ. P. 166a(b), (c).

Discussion

A.      The Separation Agreement and General Release are
one, indivisible contract.

          In
his first issue, Bridges argues that the Separation Agreement and the General Release
are two separate contracts.  He further argues that because they are separate
agreements, a failure to perform, pursuant to the Separation Agreement, does
not impede his right to enforce the General Release as a separate contract.  Although
he signed the Separation Agreement, he contends that it is “simply an informal
piece of paper” and that the General Release is the only document which
contains the terms of his layoff benefits.

The
Separation Agreement is more than an informal piece of paper.  It provides
detailed information on the various benefits Bridges would receive during his
time on “layoff status,” including the additional benefits he would receive if
he agreed to release Alcon from liability for any claims he may have had
against it.  In regards to those additional benefits, the Separation Agreement states,

In addition to the
benefits outlined above, Alcon is willing to provide the additional benefits
set forth below, if you sign, date and return the attached General Release
to Alcon . . . by March 28, 2009 (or within 45 days of receipt of this
Agreement), and do not revoke it within seven (7) days following your signing. 
The benefits outlined below will be provided after your separation date but not
earlier than the 8th day following your return of the executed General
Release.  [Emphasis added.]

 

The
Separation Agreement then devotes four paragraphs to detailing the benefits
that Bridges would receive if he signed the General Release.  In comparison, the
General Release lists the same benefits in only one sentence.

The
Separation Agreement refers to the General Release three times; twice referring
to it as being attached to the Separation Agreement.  Both documents were given
to Bridges at the same time, and both pertain to the layoff.  It is well
established that

[I]nstruments
pertaining to the same transaction may be read together to ascertain the parties’
intent, even if the parties executed the instruments at different times and the
instruments do not expressly refer to each other, and that a court may
determine, as a matter of law, that multiple documents comprise a written
contract. In appropriate instances, courts may construe all the documents as if
they were part of a single, unified instrument.

 

Fort
Worth Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 840
(Tex. 2000).  We hold that the Separation Agreement and General Release are together
a single, unified contract.  See id.; AutoNation USA Corp. v. Leroy,
105 S.W.3d 190, 198 n.2 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding)
(applying an arbitration clause found in a purchase agreement to complaints
about a “retail installment contract” because both documents relate to the same
transaction and both were signed at the time the customer made the purchase); In
re BP Am. Prod. Co., 97 S.W.3d 366, 369 (Tex. App.—Houston [14th Dist.]
2003, no pet.) (construing a closing agreement and purchase and sale agreement (PSA)
as one contract because the closing agreement “was necessary to the PSA and has
no apparent purpose other than to facilitate the transaction set forth in the
PSA”).  Thus, a breach of the Separation Agreement is a breach of the unified
contract which includes the General Release.  See Dorsett v. Cross, 106
S.W.3d 213, 221 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (holding that
appellant defaulted on a promissory note by failing to fulfill the terms of a
stock sales agreement because the note “expressly states that it is executed
pursuant to the parties’ Stock Sale Agreement”).  We overrule Bridges’s first
issue.

B.  Bridges violated company policies, and therefore, the
Separation Agreement.

          In
his second issue, Bridges argues that a violation of company policies is not a
breach of the Separation Agreement.  He asserts that the only prohibitions in
the agreement which would constitute a breach are those listed in the
“Acknowledgment section” of the agreement.  In his third issue, Bridges argues
that there is a fact question as to whether he actually violated company policies.

The
second paragraph of the Separation Agreement states,

Your
official separation from the Company will take place on February 11, 2009.[2] 
Alcon will provide you with compensation and benefits through April 15, 2009. 
The Company will provide other compensation and benefits as described below in
exchange for execution of this Agreement and the attached General Release.  You
will be expected to abide by the Company’s policies through the end of your
employment with the Company.  Prior to any payments or benefits being made
under the Assistance Plan outlined below, all Company property must be returned
to Alcon, including, but not limited to computer equipment, your parking pass
and employee badge.

 

What
Bridges calls the “Acknowledgement section” follows the description of the
additional benefits Bridges would receive if he signed the General Release.  It
is not separated by a heading or other indication that it is a separate and
distinct section.  It begins, “As a material inducement to Alcon to enter into
this Agreement and provide you with additional benefits set forth above
which are above and beyond the normal severance benefits you would be entitled
to, you agree and acknowledge that: . . . .” and goes on to request that
Bridges not disparage the company, not contact former supervisors, not disclose
the terms of the agreement, and not damage company property.  [Emphasis added.]
 The document ends with a paragraph in bold font warning that “[Bridges’s]
violation of any of the acknowledgments set forth above in the assistance plan
may result in immediate separation of payments and benefits provided under
the assistance plan.”

          It
is clear that the phrase “additional benefits set forth above” refers to the
additional assistance plan benefits that Bridges would receive for signing the
General Release.  It is also clear that violating one of the acknowledgments listed
in the so-called “Acknowledgement section” constitutes a breach of the
Separation Agreement and the General Release.  It does not follow, however,
that those are the only ways in which Bridges could breach the Separation
Agreement.  The Separation Agreement does not state that the terms listed on
the fourth and fifth pages of the five-page agreement are the only terms to
which Bridges must agree; they were additional, newly-created terms.  In fact, the
Separation Agreement explicitly does not eliminate the old terms of Bridges’s
employment; it states that Bridges is “expected to abide by the Company’s
policies through the end of [his] employment.”  When Bridges signed the
Separation Agreement, he acknowledged that he read the whole agreement and all
of the acknowledgements within, including the acknowledgement that he would be expected
to continue to abide by company policies.  To hold otherwise would make the
expectation that Bridges abide by company policies mere surplusage because its
violation would yield no consequences.  See Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983) (“[C]ourts should examine and consider the entire
writing in an effort to harmonize and give effect to all the provisions
of the contract so that none will be rendered meaningless.  No single provision
taken alone will be given controlling effect; rather, all the provisions must
be considered with reference to the whole instrument.”).

          Had
the contract not been breached, Bridges would have been considered (and would
have considered himself to be) an employee of Alcon “on layoff status” until
April 15, 2009.  Bridges points to no evidence that an employee, because his
status has changed from active to layoff status, no longer has to abide by
company policies.  That policy is set forth in the employee handbook, which
Bridges acknowledges that he received.  The handbook lists “many activities or
actions that may justify corrective action, up to and including termination of
employment.”  The list includes “removing or misappropriating property
(belonging to the Company or another employee) from the premises or from one
area to another without authorization” and “using another person’s badge, ID
card or special pass to enter or leave Company property or restricted areas;
entering Company premises in any way without proper authorization.”  Bridges
admits that he used his wife’s badge to enter the property without
authorization and removed Alcon property from the premises.  Based on this
evidence, we hold that no fact question exists as to whether Bridges violated
company policies.  We further hold that such a violation was a breach of the
Separation Agreement.  We overrule Bridges’s second and third issues.

Conclusion

          Having
overruled Bridges’s three issues, we hold that summary judgment in favor of
Alcon was proper.  We affirm the trial court’s judgment.

 

 

LEE GABRIEL
JUDGE

 

PANEL: 
LIVINGSTON,
C.J.; McCOY and GABRIEL, JJ.

 

DELIVERED:  April 21, 2011









[1]See Tex. R. App. P. 47.4.





[2]Below that paragraph is a
bullet point stating that the separation date is April 15, 2009.  In his deposition,
Bridges said that he understood that from February 11 to April 15, he would be
considered “an employee on layoff status” and that his employment was to be
officially terminated on April 15.