

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00219-CV

DAVID BRIDGES                                          APPELLANT

V.

ALCON LABORATORIES, INC.                              APPELLEE

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

----------

Appellant David Bridges appeals the trial court's order granting summary judgment in favor of Alcon Laboratories, Inc. (Alcon). We will affirm the trial court's judgment.

## Background Facts

Bridges was a project supervisor with Alcon for almost twenty-eight years until, along with many other employees, he was laid off in a mass force reduction

---

[1]*See* Tex. R. App. P. 47.4.

on February 11, 2009. On the day of the layoffs, Bridges was called into a meeting where he was presented with two documents: one entitled "Separation Agreement" and one entitled "General Release." The Separation Agreement provided that Bridges would receive certain benefits until April 15, 2009, and other additional benefits if he agreed to sign the General Release. Bridges signed the Separation Agreement and was given forty-five days to consider and sign the General Release. After the meeting, Bridges turned in his ID badge and parking pass in accordance with the Separation Agreement and was escorted from the premises.

On February 14, 2009, a Saturday, Bridges and his wife stopped by Alcon on their way home from a birthday party to look for a jacket and prescription sunglasses that Bridges had left. Bridges's wife was still employed by Alcon on that date, as she had been for fourteen years. They used the wife's ID badge to enter the building. While there, Bridges took from his former locker a tool bag containing various tools which he believed belonged to him. Three days later, on February 17, 2009, Bridges signed and returned the General Release.

On February 26, 2009, Alcon discovered the missing tools and security camera footage revealed that Bridges had taken them. The company contacted Bridges, who returned the tools. Alcon then decided to terminate Bridges's employment for violating various terms of Alcon's employment policies, including "removing or misappropriating property . . . from the premises or from one area to another without authorization;" "removing company property . . . from the

2

premises (physically or electronically) without authorization;" "entering company premises in any way without proper authorization;" and "bringing guests, family members, vendors and former employees to the work area." Based on these violations of company policies, Alcon refused to provide the benefits outlined in the General Release.

Bridges filed suit for breach of contract. Alcon moved for summary judgment on the grounds that Bridges violated terms of the Separation Agreement, which is part of the same unified contract as the General Release. Because he breached the contract, Alcon argued, Bridges was not entitled to enforce it. The trial court granted Alcon's motion for summary judgment, and this appeal followed.

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to

3

summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

**Discussion**

**A.   The Separation Agreement and General Release are one, indivisible contract.**

In his first issue, Bridges argues that the Separation Agreement and the General Release are two separate contracts.  He further argues that because they are separate agreements, a failure to perform, pursuant to the Separation Agreement, does not impede his right to enforce the General Release as a separate contract.  Although he signed the Separation Agreement, he contends that it is "simply an informal piece of paper" and that the General Release is the only document which contains the terms of his layoff benefits.

The Separation Agreement is more than an informal piece of paper.  It provides detailed information on the various benefits Bridges would receive during his time on "layoff status," including the additional benefits he would receive if he agreed to release Alcon from liability for any claims he may have had against it.  In regards to those additional benefits, the Separation Agreement states,

> In addition to the benefits outlined above, Alcon is willing to provide the additional benefits set forth below, if you sign, date and return the *attached General Release* to Alcon . . . by March 28, 2009 (or within 45 days of receipt of this Agreement), and do not revoke it within seven (7) days following your signing.  The benefits outlined below will be provided after your separation date but not earlier than

4

the 8th day following your return of the executed General Release. [Emphasis added.]

The Separation Agreement then devotes four paragraphs to detailing the benefits that Bridges would receive if he signed the General Release. In comparison, the General Release lists the same benefits in only one sentence.

The Separation Agreement refers to the General Release three times; twice referring to it as being attached to the Separation Agreement. Both documents were given to Bridges at the same time, and both pertain to the layoff. It is well established that

> [I]nstruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other, and that a court may determine, as a matter of law, that multiple documents comprise a written contract. In appropriate instances, courts may construe all the documents as if they were part of a single, unified instrument.

*Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000). We hold that the Separation Agreement and General Release are together a single, unified contract. *See id.*; *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 198 n.2 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (applying an arbitration clause found in a purchase agreement to complaints about a "retail installment contract" because both documents relate to the same transaction and both were signed at the time the customer made the purchase); *In re BP Am. Prod. Co.*, 97 S.W.3d 366, 369 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (construing a closing agreement and purchase and sale

5

agreement (PSA) as one contract because the closing agreement "was necessary to the PSA and has no apparent purpose other than to facilitate the transaction set forth in the PSA").  Thus, a breach of the Separation Agreement is a breach of the unified contract which includes the General Release.  *See Dorsett v. Cross*, 106 S.W.3d 213, 221 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (holding that appellant defaulted on a promissory note by failing to fulfill the terms of a stock sales agreement because the note "expressly states that it is executed pursuant to the parties' Stock Sale Agreement").  We overrule Bridges's first issue.

## B.    Bridges violated company policies, and therefore, the Separation Agreement.

In his second issue, Bridges argues that a violation of company policies is not a breach of the Separation Agreement.  He asserts that the only prohibitions in the agreement which would constitute a breach are those listed in the "Acknowledgment section" of the agreement.  In his third issue, Bridges argues that there is a fact question as to whether he actually violated company policies.

The second paragraph of the Separation Agreement states,

> Your official separation from the Company will take place on February 11, 2009.[2]  Alcon will provide you with compensation and benefits through April 15, 2009.  The Company will provide other compensation and benefits as described below in exchange for

---

[2]Below that paragraph is a bullet point stating that the separation date is April 15, 2009.  In his deposition, Bridges said that he understood that from February 11 to April 15, he would be considered "an employee on layoff status" and that his employment was to be officially terminated on April 15.

6

execution of this Agreement and the attached General Release. You will be expected to abide by the Company's policies through the end of your employment with the Company. Prior to any payments or benefits being made under the Assistance Plan outlined below, all Company property must be returned to Alcon, including, but not limited to computer equipment, your parking pass and employee badge.

What Bridges calls the "Acknowledgement section" follows the description of the additional benefits Bridges would receive if he signed the General Release. It is not separated by a heading or other indication that it is a separate and distinct section. It begins, "As a material inducement to Alcon to enter into this Agreement and provide you *with additional benefits set forth above* which are above and beyond the normal severance benefits you would be entitled to, you agree and acknowledge that: . . . ." and goes on to request that Bridges not disparage the company, not contact former supervisors, not disclose the terms of the agreement, and not damage company property. [Emphasis added.] The document ends with a paragraph in bold font warning that "[Bridges's] violation of any of the acknowledgments set forth above in the assistance plan may result in immediate separation of payments and benefits provided under the assistance plan."

It is clear that the phrase "additional benefits set forth above" refers to the additional assistance plan benefits that Bridges would receive for signing the General Release. It is also clear that violating one of the acknowledgments listed in the so-called "Acknowledgement section" constitutes a breach of the Separation Agreement and the General Release. It does not follow, however,

7

that those are the only ways in which Bridges could breach the Separation Agreement. The Separation Agreement does not state that the terms listed on the fourth and fifth pages of the five-page agreement are the only terms to which Bridges must agree; they were additional, newly-created terms. In fact, the Separation Agreement explicitly does not eliminate the old terms of Bridges's employment; it states that Bridges is "expected to abide by the Company's policies through the end of [his] employment." When Bridges signed the Separation Agreement, he acknowledged that he read the whole agreement and all of the acknowledgements within, including the acknowledgement that he would be expected to continue to abide by company policies. To hold otherwise would make the expectation that Bridges abide by company policies mere surplusage because its violation would yield no consequences. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("[C]ourts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.").

Had the contract not been breached, Bridges would have been considered (and would have considered himself to be) an employee of Alcon "on layoff status" until April 15, 2009. Bridges points to no evidence that an employee, because his status has changed from active to layoff status, no longer has to abide by company policies. That policy is set forth in the employee handbook,

8

which Bridges acknowledges that he received. The handbook lists "many activities or actions that may justify corrective action, up to and including termination of employment." The list includes "removing or misappropriating property (belonging to the Company or another employee) from the premises or from one area to another without authorization" and "using another person's badge, ID card or special pass to enter or leave Company property or restricted areas; entering Company premises in any way without proper authorization." Bridges admits that he used his wife's badge to enter the property without authorization and removed Alcon property from the premises. Based on this evidence, we hold that no fact question exists as to whether Bridges violated company policies. We further hold that such a violation was a breach of the Separation Agreement. We overrule Bridges's second and third issues.

## Conclusion

Having overruled Bridges's three issues, we hold that summary judgment in favor of Alcon was proper. We affirm the trial court's judgment.

                                                LEE GABRIEL
                                                JUDGE

PANEL:  LIVINGSTON, C.J.; McCOY and GABRIEL, JJ.

DELIVERED:  April 21, 2011