**AFFIRMED; Opinion Filed April 2, 2020**



**In the**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00151-CV

**MARY CAIRE, Appellant**
**V.**
**GENETIC DIRECTION LLC, Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-05781**

## MEMORANDUM OPINION
Before Justices Bridges, Molberg, and Carlyle
Opinion by Justice Carlyle

Physician Mary Caire appeals the trial court's judgment confirming an arbitration award in favor of appellee Genetic Direction, LLC. In two issues, Ms. Caire contends the trial court erred by granting Genetic Direction's motion to compel arbitration and by confirming the arbitration award. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.7.

## Background

In November 2014, Ms. Caire and Genetic Direction signed a written "Professional Services Agreement" (PSA) in which Genetic Direction retained Ms.

Caire "as its Medical Director and to provide professional medical and consultative services." The PSA stated (1) in consideration for Ms. Caire "performing duties requisite to launching the Company and its services," Genetic Direction "shall grant Physician 2% (two percent) membership interest in the Company (the 'Sign-On Consideration'), vesting according to the following schedule: 1.0% - Upon Execution of this Agreement; 0.5% - December 31, 2015; 0.5% - December 31, 2016," and (2) in consideration for Ms. Caire "providing the Professional Services," Genetic Direction "shall pay Physician $2,000 per month" and she will "accrue an additional $2,000 per month in deferred compensation" payable at the company's discretion, which "will remain payable to Physician" in the event of the PSA's termination. Either party could terminate the PSA "at any time and for any reason." The PSA also contained an arbitration provision that stated "any unresolved dispute or controversy arising under or in connection with the Agreement shall be settled exclusively by arbitration."

In December 2014, Ms. Caire and Genetic Direction signed a written "Buy-Sell Agreement" (BSA), which (1) described restrictions and procedures applicable to any sale or transfer of owners' interests in Genetic Direction and (2) provided, among other things, a formula for determining the minimum price at which an owner or the company was entitled to purchase the interest of an owner who "ceases to be an employee of the Company" or is otherwise "deemed to have offered to sell such Owner's Interests." The BSA also stated, "This Agreement constitutes the entire

agreement of the Owners among themselves or with the Company regarding the subject matter of this Agreement and supersedes all prior agreements regarding such subject matter." The BSA did not include an arbitration clause.

Ms. Caire terminated the PSA in January 2015. One month later, Genetic Direction sent Ms. Caire a letter stating that pursuant to the BSA, the company was "exercising its right to purchase your 1% membership interest" for the price provided for in the BSA, which the company had determined was $27.25. A cashier's check for that amount was enclosed.

In March 2018, Ms. Caire sent Genetic Direction a letter demanding (1) the "remaining 1%" of the 2% interest she "was to be compensated by" under the PSA; (2) $11,066.66 in unpaid compensation for November 2014 through January 2015; and (3) documentation to substantiate the claimed $27.25 valuation of her 1% ownership interest the company had sought to buy back.

Genetic Direction served Ms. Caire with an April 12, 2018 demand for arbitration and "Statement of Claim." Genetic Direction (1) contended Ms. Caire "breached the PSA by failing to perform the required services" and (2) sought a declaration that "as a result of Ms. Caire's termination of the PSA and, prior to such termination, her failure to perform services under the PSA, Ms. Caire is not entitled to the claimed 2% ownership interests or compensation."

Ms. Caire filed a May 2, 2018 petition in the trial court. She contended that "in consideration for performing duties requisite to the launching of the company

–3–

and its services," she "was provided a 2% interest in ownership" of Genetic Direction "pursuant to the terms of the PSA." She asserted a claim for breach of the BSA and sought a declaratory judgment that she currently held a "vested 2% ownership interest" in Genetic Direction because the company "never complied with the requisite provisions of the [BSA]" regarding the purchase of her interest.

Genetic Direction moved to compel arbitration, asserting that the vesting of ownership interests was dependent on Ms. Caire providing the services described in the PSA and "[p]rior to her termination of the PSA, Ms. Caire had failed to provide services as required." Genetic Direction stated that because Ms. Caire's claims "relate to [her] alleged ownership interests including what equity interest, if any, vested" and "are tied to her provision of services and the granting of ownership interests, which are governed by the PSA," her claims "fall within the scope of the arbitration agreement signed by the parties and must be brought in arbitration."

Ms. Caire filed a response to the motion to compel in which she contended (1) she "is the owner of 2% of Defendant pursuant to the terms of the PSA"; (2) the BSA "specifies that [the BSA] was the entire agreement of the Owners and superseded any prior written agreements"; and (3) "[t]he [BSA] has NO provisions which allow for Arbitration."

Ms. Caire's counsel did not appear at the hearing on the motion to compel arbitration, and the trial court signed a June 18, 2018 order granting that motion. Ms. Caire moved for reconsideration, asserting counsel's failure to appear "was due to

–4–

accident or mistake," and contended "good cause exist[s] for the reconsideration of the motion," restating her arguments described above. The trial court denied reconsideration, and arbitration proceeded.

The arbitrator signed a December 17, 2018 award in Genetic Direction's favor, stating Ms. Caire "is not entitled to any membership interests in Genetic Direction, LLC" and awarding Genetic Direction $40,000.00 in attorney's fees plus the arbitration fees and expenses. In late December 2018, Genetic Direction moved to confirm the arbitration award.

Ms. Caire filed a January 3, 2019 motion to vacate the award pursuant to Texas Civil Practice and Remedies Code section 171.088(a)(4), which requires a court to vacate an award if "there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection." In its response, Genetic Direction asserted that Ms. Caire "fails" two of section 171.088(a)(4)'s three requirements because "[t]here was an agreement to arbitrate" and "[t]he issue of arbitrability was adversely determined by [the trial court]."

After a hearing, the trial court denied Ms. Caire's motion to vacate the arbitration award and granted Genetic Direction's motion to confirm the award.

**The trial court did not abuse its discretion by compelling arbitration**

We review a trial court's order granting or denying a motion to compel arbitration for abuse of discretion, deferring to the trial court's factual determinations

–5–

if they are supported by evidence but reviewing its legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009). Whether the claims in dispute fall within the scope of a valid arbitration agreement is a question of law and thus is reviewed de novo. *Id.*; *see also Perry Homes v. Cull*, 258 S.W.3d 580, 585–87 (Tex. 2008) (concluding appellate courts may review trial court orders compelling arbitration on appeal from final judgment rendered upon confirmation of arbitration award).

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (citing *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014)). The determination of whether a party has agreed to arbitrate is a matter controlled by contract interpretation principles. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018). In accordance with those principles, we "give effect to all the provisions of the contract so that none will be rendered meaningless." *Seagull Energy E&P, Inc. v. Eland Energy Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). To determine whether a party's claims are within the scope of an arbitration agreement, we focus on the factual allegations and not on the legal causes of action asserted. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding).

In her first issue, Ms. Caire asserts the trial court erred by granting Genetic Direction's motion to compel arbitration because the BSA "specifically provid[es]

that it is the entire agreement between the parties and supersedes all other agreements" and thus the PSA is "superseded."

Though Ms. Caire asserts the BSA "specifically provid[es] that it is the entire agreement between the parties and supersedes all other agreements," the BSA stated, "This Agreement constitutes the entire agreement of the Owners among themselves or with the Company *regarding the subject matter of this Agreement* and supersedes all prior agreements *regarding such subject matter*." (emphasis added). The BSA addressed only restrictions and procedures applicable to the sale or transfer of owners' interests in Genetic Direction. Thus, based on the BSA's plain language, we disagree with Ms. Caire that the BSA entirely superseded the PSA, which did not address or mention the sale or transfer of owners' interests. *See Seagull Energy*, 207 S.W.3d at 345.

Further, Ms. Caire's claims were dependent on her contention in her petition that she "was provided a 2% interest in ownership" of Genetic Direction "pursuant to the terms of the PSA," which Genetic Direction disputed throughout the underlying proceedings. The BSA did not mention or address the granting or vesting of ownership interests. On this record, we conclude the trial court did not abuse its discretion by compelling arbitration pursuant to the PSA. *See Henry*, 551 S.W.3d at 115; *FirstMerit Bank*, 52 S.W.3d at 754; *see also In re B.P. Am. Prod. Co.*, 97 S.W.3d 366, 370 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding)

–7–

(concluding allegations "factually intertwined with arbitrable claims" were subject to arbitration).

**The trial court did not err by confirming the arbitration award**

We review a trial court's ruling confirming an arbitration award de novo based on the entire record before us. *See Cambridge Legacy Grp., Inc. v. Jain*, 407 S.W.3d 443, 447 (Tex. App.—Dallas 2013, pet. denied). An arbitration award has the same force as a judgment of a court of last resort and is presumed valid and entitled to great deference. *Id.* Thus, we indulge all reasonable presumptions to uphold the arbitration award and no presumptions are indulged against it. *See CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). A party seeking to vacate an arbitration award bears the burden of presenting a record that establishes its grounds for vacating the award. *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet.).

Because Texas law favors arbitration, judicial review of an award is narrow. *See Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016). Under both the Texas Arbitration Act and the Federal Arbitration Act, vacatur is limited to the grounds expressly provided by statute; there are no common-law grounds for vacating an arbitration award. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008); *Hoskins*, 497 S.W.3d at 494. Unless the arbitration award is vacated, modified, or corrected on a ground provided in those arbitration acts, the trial court

must grant a party's motion to confirm an award. *See* TEX. CIV. PRAC. & REM. CODE § 171.087.

Section 171.088(a)(4) states that on application of a party, the court shall vacate an award if "there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B [of the code's Chapter 171], and the party did not participate in the arbitration hearing without raising the objection." *Id.* § 171.088(a)(4). Subchapter B of Chapter 171, titled "Proceedings to Compel or Stay Arbitrations," provides in part that "[i]f a party opposing an application [for arbitration] denies the existence of the agreement, the court shall summarily determine that issue." *See id.* §§ 171.021–.026.

In her second issue, Ms. Caire contends the trial court erred in confirming the arbitration award because "arbitration had been improperly compelled." Though Ms. Caire describes two of section 171.088(a)(4)'s requirements, she does not address the third requirement, that "the issue was not adversely determined in a proceeding under Subchapter B." Ms. Caire cites no authority, and we have found none, for her assertion that vacatur is proper when only two of section 171.088(a)(4)'s requirements are satisfied. The record shows the trial court held a hearing on Genetic Direction's motion to compel prior to granting that motion. *See id.* § 171.021. Also,

we concluded above that an agreement to arbitrate existed. We conclude Ms. Caire did not satisfy section 171.088(a)(4)'s three requirements.[1]

We decide Ms. Caire's two issues against her and affirm the trial court's judgment.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

190151F.P05

---

[1] In her appellate reply brief, Ms. Caire asserts for the first time that vacatur was proper based on civil practice and remedies code section 171.088(a)(3)(A), which provides for vacating an arbitration award if the arbitrators "exceeded their powers." Ms. Caire did not present that complaint to the trial court or assert it in her opening appellate brief. Consequently, that complaint presents nothing for this court's review. *See* TEX. R. APP. P. 33.1; *Prescription Health Network LLC v. Adams*, No. 02-15-00279-CV, 2017 WL 1416875, *7 (Tex. App.—Fort Worth Apr. 20, 2017, pet. denied) (mem. op.) (concluding new ground for setting aside arbitration award could not be raised for first time in appellate reply brief).



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

MARY CAIRE, Appellant

No. 05-19-00151-CV     V.

GENETIC DIRECTION LLC,
Appellee

On Appeal from the 134th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-05781.
Opinion delivered by Justice Carlyle.
Justices Bridges and Molberg
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Genetic Direction LLC recover its costs of this appeal from appellant Mary Caire.

Judgment entered this 2nd day of April, 2020.